# SPRING-SPECIAL TERM, 1895.

## CHARLESTON.

### CLIFTON *v.* MONTAGUE.

Submitted January 12, 1895—Decided March 27, 1895.

1. LEASE—IMPLIED COVENANT.

    Where a party in a written lease describes the property as "the premises known as the 'Bedford Salt Furnace Property,' together with all the appurtenances thereto belonging, including six salt wells, tools and fixtures of the same," there is no implied covenant on the part of the lessor that there are on said premises six salt wells of any particular productive capacity, or suitable for the purposes for which they are leased.

2. LEASE—RECITALS.

    The recitals contained in said lease as to the number of salt wells included in the premises, after the lease has been accepted and acted on for more than two years by the lessee, with ample opportunity of knowing, not only the contents of the lease, but the character and quality of the property leased, must be regarded as conclusive of the fact between the parties to said lease.

3. LEASE—IMPLIED WARRANTY.

    The words "including six salt wells," contained in said lease, create no implied warranty that there were six salt wells on said premises of any particular quality or fitness for manufacturing salt.

4. LEASE—COVENANT TO KEEP IN REPAIR—UNAVOIDABLE ACCIDENTS.

    Where a written lease of property provides that the lessee shall keep the same in repair except as to unavoidable accidents and natural wear and tear, the law will not imply a contract on the part of the lessor to repair damages caused by unavoidable accidents.

MALCOLM JACKSON, TOMLINSON & WILEY and CHAS. E. HOGG for plaintiff in error, cited 1 Taylor Land & Ten. (8 Ed.) 295; 5 Cow. 570; 23 Ark. 9; 17 Mass. 411; 1 Green. Ev. (14 Ed.) 280; 26 W. Va .460; 2 Wall. 728; 2 Rice Evidence

903; 20 Or. 108; 10 Lawyer's Reports Annotated, 785; 70 Tex. 30, 377; 9 S. E. Rep. 672; 2 C. C. A. 319; 100 Mass. 63; 5 Lans. (N. Y.) 230; 19 Wall. 548; 66 Mo. 63; 34 W. Va. 155, 764; 35 W. Va. 387, 389.

JOHN U. MYERS for defendant in error, cited among other cases, 24 W. Va. 206; 26 Am. Rep. 556; 33 W. Va. 32; 13 Gratt. 705; 6 Gratt. 633; 105 Mass. 478; 23 Mich. 164; 23 N. E. Rep. 1006; 9 Cush. 242; 135 Mass. 380; 145 Mass. 363; 118 N. Y. 110; 7 Am. St. Rep. 269; 77 Am. Dec. 229; 31 Barb. (N. Y.) 345; 44 N. J. L. 331; 23 Mich. 164; 82 Va. 612; Sto. Part. § 244; 2 Mass. 455; 15 Va. Law Journal 163; 17 Am. & Eng. Ency. of Law 505, 510, 511; 47 Me. 362; 24 Me. 534; 62 Ala. 299; 2 Dowl. 258; 10 Ala. 109; 1 Bart. L. Pr. 254, 464, 255, 315; 14 Gratt. 241; 22 Gratt. 136; 54 N. H. 426; 30 Pa. St. 293; 44 N. J. L. 332; 1 Sneed (Tenn.) 614; 7 Wall (U. S.) 416; 4 Mo .App. 591; 23 Mich. 164; 9 Cush. 242; 9 Cush. 89; 37 Barb. 313 or 331; 56 N. Y. (11 Sick.) 398; Am. Rep. 438; 48 Me. 316; 104 Ind. 81; 5 Rob. Pr. p. 78; 103 U. S. R. 485; 86 Va. 995; 76 Va. 169; 5 Gill 132 (46 Am. Dec. 628); 1 Chitty's Pl. (16 Ed.) p. 11 to 15 and notes 6th; 8 Serg. and Rawle 308; 4 Serg. and Rawle 549; 6 Mass. 460; 10 Mass. 379; 2 John Cos. 384; 1 Wash. Rep. 9 (15 Johns. 482); 16 Johns. 34; 18 Johns. 459; 8 Serg. and Rawle 53; 11 Johns. 141; 13 Pet. (U. 416; 4 Mo. App. 591; 23 Mich. 164; 9 Cush. 242; 9 Cush. 89; 71 N. Y. 481; 40 Barb. 574; 121 Ill. 61; 75 Wis. 462; 13 S. W. Rep. (Ky.) 108; 108 N. Y. 137; 34 Ga. 186; 2 Ill. 140; 38 Iowa 321; 85 Ky. 597; 52 Me. 597, 598; 6 Cush. (Mass.) 142; 9 Cush. (Mass.) 191; 29 Mich. 50; 5 Mich 368; 44 Mich. 617; 35 Miss. 25; 49 Mo. 559; 44 Mo. 444; 87 Pa. St. 365; 99 Pa. St. 555; (S. C. 44 Am. Rep. 126); 80 Va. 247; 23 How. (U. S.) 117; 117 U. S. 602; 90 N. Y. 213; 38 O. St. 659, 663; 45 O. S. 235, 236.

ENGLISH, JUDGE:

This was an action of covenant brought in the Circuit Court of Mason county by George Clifton against T. G. Montague. The action was predicated upon a lease executed by said T. G. Montague to said George Clifton and W. H. Cavan, dated August 23, 1890, whereby, in consideration of

the rents and covenants therein contained, the said T. G. Montague leased unto said Clifton and Cavan, for the period of three years from that date, the premises known as the "Bedford Salt Furnace Property," together with all the appurtenances thereto belonging, including six salt wells, tools and fixtures of the same, and the buildings of the party of the first part located thereon, situated in and near the village of Clifton, Mason county, W. Va., with the right to mine coal in the manner therein prescribed, to run said furnace, etc., upon the considerations and limitations therein set forth.

The plaintiff, in his declaration, averred that the defendant by said lease, for himself, impliedly and by operation of law, did covenant with the said George Clifton and W. H. Cavan that said premises and property included six salt wells as in the said deed specified, suitable for pumping brine therefrom and supplying the same to said furnace in the manufacture of salt on said premises, and that the defendant had not performed, fulfilled, and kept the covenants contained in said deed according to the tenor and effect, true intent, and meaning thereof, in this: That there were not six salt wells on said premises, as called for in said deed, suitable and proper for pumping brine therefrom and supplying brine to said furnace for the manufacture and sale of salt, but that there were only five salt wells on said premises suitable for pumping brine therefrom and supplying brine to said furnace in the manufacture and sale of salt.

On the 10th day of February, 1893, the defendant craved oyer of the lease, and demurred to the plaintiff's declaration, which demurrer was overruled, and thereupon the defendant pleaded covenants performed and covenants not broken, and issue was thereon joined. On the 8th day of May, 1893, the plaintiff was allowed to amend his declaration at bar by inserting an additional count, in which count the breach was alleged as follows: "And plaintiff avers that, after said lease had been made and entered into as aforesaid, the said defendant, through his agent and employes, continued to work on said well in the act of putting it in proper order and repair for some time thereafter, but said defendant failed and

refused to fininsh the work of repairing said well; and by the negligence of his (defendant's) agents and employees, while said repairs were in progress, said well was rendered wholly worthless and made incapable of use by said lessees,. Clifton and Cavan, and said well was practically destroyed, leaving in effect but five salt wells on' said premises; and by reason of said negligence of the said defendant, through his· agent and employes, in working on said well as aforesaid, said well was so much injured and impaired as not to be practically susceptible of being put in proper and suitable condition for use in connection with salt furnaces. And plaintiff avers that the defendant, in thus holding out to Clifton and Cavan before said lease was executed his purpose and intention of repairing said sixth well, whereby said lessees were induced to enter into said lease, after the execution to abandon as aforesaid the repairs of said well, and by defendant's own acts, as aforesaid, to render said well wholly worthless, was and is a gross fraud thereby practiced upon said lessees."

On the 16th day of May, 1893, the demurrer to the declaration as amended was sustained, and the plaintiff filed a second amended declaration by adding two new counts· thereto, in the first of which counts the plaintiff averred that "the said defendant, since the making of said deed, hitherto had not performed, fulfilled, and' kept the covenant in said deed contained on his part to be performed, fulfilled, and kept according to the tenor and effect, true intent, and meaning of said deed, in this, to wit: That there were not six salt wells on said premises, as called for in said deed, but that there were only five salt wells on said premises, and not six, as stipulated in, said deed of lease.

"And plaintiff further averred that, in consequence of there being but five salt wells on said premises, the said George Clifton and W. H.｟Cavan were forced' and compelled to provide another salt well at their own cost and expense, and at great delay and loss of time, and they were thereby greatly hindered and' injured in the business·of the manufacture and sale of salt on the said premises desribed and leased in and by said deed, of all of which the said defendant

afterwards, to wit, on the 1st day of December,1892, and long prior thereto, had notice." In the second count the plaintiff avers, as a breach of covenant, "that the said defendant, since the making of the deed aforesaid, hitherto has not performed, fulfilled, and kept the covenants in said deed contained on his part to be performed, fulfilled and kept according to the tenor and effect, true intent, and meaning of said deed, in this, to wit: That the said defendant failed and neglected to deliver unto the said plaintiff and said W. H. Cavan the six salt wells in said deed of lease stipulated for, and only delivered unto them five salt wells, instead of the six wells called for in said lease, and that in consequence of the failure and neglect of the said defendant to deliver unto the said plaintiff and said W. H. Cavan the six salt wells stipulated for in said deed of lease, and by reason of his delivery of only five salt wells unto said plaintiff and said Cavan, the said George Clifton and W. H. Cavan were forced and compelled to provide another salt well at their own cost and expense, and at great delay and loss of time, and they were thereby greatly hindered and injured in the business of the manufacture and sale of salt on the said premises described in and by said deed, of all of which the said defendant afterwards had notice."

At the September term, 1893, the defendant craved oyer of the writing obligatory sued on in this action, and demurred to the plaintiff's declaration as amended, and to each count thereof, in which the plaintiff joined, which demurrer was sustained by the court as to counts Nos. 1 and 2, and overruled as to counts Nos. 3 and 4, being the last two counts added, by way of amendment, to said declaration; and the defendant pleaded covenants performed and covenants not broken, and issue was joined thereon. The case was submitted to a jury, and after the plaintiff had introduced all of his witnesses, and examined them before the jury, and rested his case, the defendant, by his attorney, moved the court to exclude from the jury all the evidence introduced by the plaintiff, which motion was sustained by the court; and the plaintiff, by his counsel, excepted, and asked that the evidence so excluded be certified by the court and made part of

the record, which was accordingly done; and the jury found a verdict for the defendant, and thereupon the plaintiff moved the court to set aside the verdict and award him a new trial, because said verdict was contrary to the law and the evidence, which motion the court overruled. The plaintiff excepted. Judgment was rendered for the defendant, and this writ of error was obtained.

The first error assigned and relied upon by the plaintiff in error is as to the action of the Circuit Court in sustaining the demurrer to the plaintiff's declaration and first amended declaration. If, in considering the questions raised by this assignment of error, we turn to the rules prescribed by the elementary works in regard to the action of covenant as a remedy, we find in Chitty's Pleading (16th Ed. vol. 1, p. 129) the author says: "The rules respecting this action are few and simple. It is a remedy provided by law for the recovery of damages for the breach of a covenant or contract under seal. It can not be maintained except against a person who, by himself or some other person acting on his behalf, has executed a deed under seal, or who, under some very peculiar circumstances, which will be noticed hereafter, has agreed by deed to do a certain thing. In the case of a covenant under seal an action of covenant may be supported, whether such covenant be contained in a deed poll or indenture, or be express or implied by law from the terms of the deed." Upon this question as to the existence and extent of implied covenants, Mr. Justice Swayne, in delivering the opinion of the court in the case of *Sheets v. Selden,* 7 Wall. 423, says: "The tendency of modern decisions is not to imply covenants which might and ought to have been expressed if intended. A covenant is never implied that the lessor will make any repairs. The tenant can not make repairs at the expense of the landlord unless by special agreement. If a demised house be burned down by accident, the rent does not cease. The lessee continues liable, as if the accident had not occurred." In the case under consideration the lessees covenanted and agreed to pay to the lessor, his personal representative or assigns, two hundred and fifty dollars per month, at the end of each calendar month, for the use of the furnace and the bit-

tern flowing therefrom, and for the use of stable and ten dwelling houses upon said premises, and, in addition thereto, to pay a royalty for the coal to be mined by them in the quantity and manner therein prescribed. And it was further provided that, if said lessees failed or neglected to pay the party of the first part the rent and royalty for the space of five days after the same became due, without further demand, the said lessor might re-enter and take possession of said premises without legal process, and put an end to said tenancy, without waiving any security held by him for such rent and royalty. Said lessees also covenanted to keep said furnace plant in proper and sufficient repair, and, at the termination of the lease, to surrender and deliver possession of the premises and property therein described unto the said lessor, his heirs or assigns, in good working order and condition, unless destroyed by fire or other unavoidable casualty not caused by the negligence or carelessness of said lessees, their servants or agents. Now, oyer was craved of this lease when the demurrer was entered; and, in determining the questions raised by the demurrer, we must take the lease by the four corners, and gather from the entire instrument the true intent of the contracting parties. It appears therefrom that two hundred and fifty dollars per month was to be paid for the use of the furnace and the bittern flowing therefrom, and that the lessees expressly covenanted to keep the furnace plant in order and sufficient repair. Now, what is meant by the words "furnace plant"? Webster defines the word "plant," in a commercial point of view, as follows: "The whole machinery and apparatus employed in carrying on a trade or mechanical business, also sometimes including real estate and whatever represents investment of capital in the means of carrying on a business, but not including material worked upon or finished products; as the plant of a foundry, a mill, or a railroad." By the express terms and provisions of the lease, then, the lessees were to keep said furnace plant in proper and sufficient repair. The words "furnace plant," under the above definition we must regard as broad enough to cover the six salt wells, and especially is this the case when the lease on its face describes the proper-

ty leased as the "Bedford Salt Furnace Property," together with all the appurtenances thereto belonging, including six salt wells, tools and fixtures of the same, *etc.;* and, when we look further, it is apparent that the lessees covenanted and agreed to surrender and deliver possession of the premises and property thereinbefore described unto the party of the first part, his heirs or assigns, in good working order and condition, unless destroyed by fire or other unavoidable casualty not caused by the negligence or carelessness of said lessees, their servants or agents. Now, it is not to be presumed that said lessees would have covenanted to return the property described in the lease (which, in express words, includes six salt wells) if there were only five salt wells on the property, or that they would have entered into a covenant under seal for the lease of six salt wells when in reality there were only five on the property. Bigelow, in his valuable work on Estoppel, on page 611, says: "Generally speaking, it is often said that a man is presumed to know the truth in regard to facts within his own special means of knowledge. More definitely the rule has been stated thus: What a person is bound to know has regard to his particular means of knowledge, and to the nature of the representation, and is then subject to the test of the knowledge which a man, paying that attention which every man owes to his neighbor in making a representation, would have acquired in the particular case by the use of such means." In the case at bar, the lessor, in describing the property leased, speaks of it as the following premises and properties, to wit: "The premises known as the 'Bedford Salt Furnace Property,' together with all the appurtenances thereto belonging, including six salt wells," *etc.*, located thereon. The lessees, we must conclude, had the means of knowledge within their power as to the number of salt wells on this salt property. The number of salt wells on the property was not a matter of insignificance, but, on the contrary, the gravamen of the complaint in the plaintiff's declaration is that there were only five salt wells instead of six, as set forth and described in the lease. We must, then, regard the words "including six salt wells" as a particular

and definite recital of a material fact, and under the head of Estoppel (7 Am. & Eng. Enc. Law, p. 7) the law is stated thus: "Particular and definite recitals are conclusive evidence of the material facts stated;" meaning the material facts stated in a deed. And Bigelow on Estoppel, on page 345, says: "Between grantor and grantee the recitals of the deed will, doubtless, be conclusive evidence in a proper case." The recital contained in the deed of lease as to the number of salt wells on this property we must regard as conclusive of the fact; and the lessee, having accepted and acted upon said lease for more than two years, with ample opportunity of knowing not only the contents of the lease, but the character and quality of the property leased, is estopped from saying there were only five salt wells instead of six upon said salt property.

The plaintiff, then, having placed himself in a position which precludes him from denying that there were six salt wells on said property, the next question to which we direct our attention is as to whether the defendant, Montague, by his lease, covenanted that the said wells should yield any particular quantity of salt water, or have any particular productive capacity. So far as expressed covenants are concerned, the lease is silent as to the fitness of these wells for producing salt water. Is there any implied covenant, or covenant by operation of law, that said wells shall be fit for the purpose for which they were leased? If the wells were deficient, the lessees, by a provision contained in the lease, might have terminated their tenancy at the end of any month by failure to pay the rent for five days; but they saw proper to run the furnace for more than two years, and this would indicate that the property had some fitness for salt making. The weight of authority, however, as we understand it, is that there is no implied warranty as to the fitness of the leased premises for the purposes for which it is leased. So, in the case of *Harlan* v. *Navigation Co.*, 35 Pa. St. 287, it was held that "a lease of the right to mine coal in the land of the lessor is the grant of an interest in the land, and not a mere license to take the coal. In such a case there is no implied warranty that the land contains coal veins;" and that,

"if the parties to a coal lease were under a mutual mistake
as to the existence of coal veins in the land demised, the
proper remedy of the lessee is by a proceeding to rescind
the contract; he can not have relief in an action in affirmance
of it." In the case of *Sutton* v. *Temple*, 12 Mees. & W. 52,
Park, B., held as follows: "With respect to the other and
principal question in this case, *viz.*, whether a contract or
condition is implied by law, on the demise of land, that it
shall be reasonably fit for the purpose for which it is taken,
if the question were *res integra*, I should entertain no doubt
at all that no such contract or condition is implied in such
a case. The word 'demise' certainly does not carry with it
any such implied undertaking. The law merely annexes to
it a condition that the party demising has a good title to the
premises, and that the lessee shall not be evicted during the
term. If we included any such contract as is now contended
for, then in every farming lease, at a fixed rent, there would
be an implied condition that the premises were fit for the
purposes for which the tenant took them, and it is difficult
to see where such a doctrine would stop." In the case of
*Clark* v. *Babcock*, 23 Mich. 164, it was held that a lease of a
salt well implies no covenant that the well shall be of any
productive capacity. In the absence of any distinct agree-
ment, the lessee takes it as he finds it. And in the case of
*Kline* v. *McLain*, 33 W. Va. 32 (10 S. E. Rep. 11) this Court
held that "a lessee of a store room can not recover in an ac-
tion of *assumpsit* against his lessor for damages sustained
by reason of the failure of said lessor to repair damages to
such building caused by unavoidable accident, when there
is a written lease between said contracting parties, in the
absence of an express covenant that said lessor should make
such repairs," and that "where a written lease of such build-
ing provides that the lessee shall keep the same in repair, ex-
cept as to 'unavoidable accidents and natural wear and
tear,' the law will not imply a contract on the part of the
lessor to repair damages caused by unavoidable accidents,
and a demurrer will be sustained to a declaration setting
forth these facts in a special count," that "the lessee in such
an action will be confined to the terms of the written con-

tract declared upon, and can not recover upon a verbal contract or understanding made or had contemporaneously with said written lease." Washburn on Real Property (volume 1, p. 537, § 7) states the law as follows: "Without an express contract on the part of the lessor, he can not be held liable for repairs made by the tenant upon demised premises. Nor would he be bound by a parol promise to make repairs if such promise is founded only upon the relation of landlord and tenant." Among the cases which might be cited upon this point, a canal company made a lease of water power which had been created by the construction of the canal. It was held not to constitute a covenant on the part of the lessors to keep the canal in repair or supply it with water; and, if the canal was discontinued, the lessee was without remedy. *Trustees* v. *Brett*, 25 Ind. 410. So, the lease of a water power out of a mill-pond then existing was not held to constitute an obligation on the part of the lessor to keep the dam in repair. *Morse* v. *Maddox*, 17 Mo. 569. And a grant for a right to take water from a well does not bind the owner of the well to repair it."

Reading then, the lease upon which this action was predicated, in the light of the authorities I have had an opportunity of examining, I can not construe the words "including six salt wells, tools and fixtures of the same," as implying six salt wells of any particular or peculiar fitness for the purpose of supplying salt water for the use of the furnace; neither can I hold that a salt well which is accidentally obstructed by the tubing is not a salt well; and, as we have seen, if the well is out of repair, in the absence of a special covenant the lessor is not bound to repair, but the lessee takes the property as he finds it.

Under our construction then, said lease contained no covenant, either impliedly or by operation of law, that said premises and property included six salt wells suitable for pumping brine therefrom and supplying the same to said furnace in the manufacture of salt on said premises. If it was true that there was a covenant implied that the six salt wells should be fit and suitable for pumping brine for said furnace, then it is true such implied covenant might be set forth in

the declaration; but, as there is no such implied covenant, the plaintiff must be confined in his pleading and proof to the covenants contained in the instrument sued upon; and the pleader in this instance having gone beyond the scope of the covenants contained in the lease, and being unauthorized to do so by any implied covenant, the Circuit Court, in my opinion, committed an error in sustaining the demurrer to said first declaration.

The plaintiff, in his amended declaration, avers that, " before said lease was executed, the defendant well knew that there were but five salt wells on said premises suitable to be used and pumped in the manufacture of salt; and defendant also knew that to render said Bedford Salt Furnace fit to well and properly make salt in the usual and ordinary way, the other and sixth well complained of therein would have to be repaired and made suitable as a salt well to be used in connection with said furnace; and that while the defendant, through his agents was proceeding to repair said well, the said lease was made; and that, after said lease was made, the defendant continued to work on said well in the act of putting it in proper order and repair for some time thereafter, but said defendant failed and refused to finish the repairs on said well, and by negligence of defendant's agents and employes, while said repairs were in progress, said well was rendered wholly worthless, leaving, in effect, but five salt wells on said premises; and that plaintiff was induced to enter into said lease by the defendant holding out to said Clifton and Cavan, before said lease was executed, his purpose and intention of repairing said sixth well, and afterwards to abandon said well, and by defendant's own acts to render said well wholly worthless, was a gross fraud upon said lessees," *etc.*  Now, when it is remembered that this is an action of covenant, and the instrument sued on contains nothing implying an assurance that said well should be put in repair, and the law itself does not imply that the property leased shall have any particular suitableness or fitness for the purpose for which it is leased, and when we consider, further, that the landlord is not bound to repair in the absence of a special covenant to that effect, we need but to refer to the

ruling of this Court in the case of *Kline* v. *McLain*, 33 W. Va. 32 (10 S. E. Rep. 11) where it is held that "the lessee in such an action, will be confined to the terms of the written contract declared upon, and can not recover upon a verbal contract or understanding made or had contemporaneously with said written lease;" and I can reach no other conclusion than that the demurrer was properly sustained to the amended declaration.

The plaintiff filed a second amended declaration, including two counts, which was also demurred to; but the court overruled the demurrer to said second amended declaration, as before stated. Did the court err in so ruling? These counts we regard also, as demurrable, for the reason that the lease, which (oyer having been craved) must be read in connection with the declaration, contains, as we construe it, no covenant, express or implied, that the property therein described contained six salt wells of any particular capacity, or that they were fit for the purpose for which they were leased. In the case of *Cowen* v. *Sunderland*, 145 Mass. 364 (14 N. E. Rep. 117) Devens, J., delivering the opinion of the court, says: "It is a general rule, well established by the decisions of this court, that the lessee takes an estate in the premises hired, and takes the risk of the quality of the premises in the absence of an express or implied warranty by the lessor or of deceit. * * * The rule of *caveat emptor* applies, and it is for the lessee to make the examination necessary to determine whether the premises he hires are safe and adapted to the purposes for which they are hired." In the first of said counts it is complained that there were only five salt wells on said premises, and not six, as stipulated in said deed of lease; and, while it is true that the lease describes the premises as including six salt wells, yet, when we remember that *caveat emptor* applies, and the plaintiff, under his hand and seal, has admitted that there were included in the premises six salt wells, he can not be heard to deny it. The second count avers that the defendant, by said deed, impliedly and by operation of law, did covenant with plaintiff and said Cavan to deliver unto them six salt wells on said premises for the purpose of the manufac-

ture of salt under said deed of lease, and the breach complained of is that only five salt wells were delivered to them instead of six, as called for in said lease. My construction of the lease, however, is that there was no implied covenant to deliver to said Clifton and Cavan any number of salt wells. The property leased to them is described in the lease as "the premises known as the 'Bedford Salt Furnace Property,' together with the appurtenances thereto belonging, including six salt wells," *etc.;* and, in speaking of the six salt wells, the evident intention was to describe the property included in the lease.

The deed itself would carry the right of possession. Ample time was given for examination. The deed bears date the 23d of August, 1890; and, according to the averments of the declaration, possession was not taken thereunder until the 28th day of October following. So that, if the rule *caveat emptor* is applied, the plaintiff can not complain, as he had ample time to examine the premises and ascertain what was included in the lease, and yet he took possession, and operated the property for more than two years thereafter; and, as to the implied covenant averred, it was held in *Hudson Canal Co.* v. *Pennsylvania Coal Co.*, 8 Wall. 276, that "in the case of a contract drawn technically in form, and with obvious attention to details, a covenant can not be implied, in the absence of language tending to a conclusion that the covenant sought to be set up was intended." Looking to the contents of this lease, it is apparent that the same is carefully and technically drawn, providing for the mining of coal, and furnishing the same to the furnace and engines, and allowing a deduction from the royalty in the event the furnace is stopped for more than five days without fault of the lessees, allowing the lessor to re-enter and re-occupy the premises upon the failure to pay rent and royalty for five days after the same falls due, providing that the property should not be sublet without the written consent of the lessor, and also that if the property should be seized by legal process for the debts of the lessees, the same should revert to the lessor; also containing a covenant that

the lessees should keep the furnace plant in proper and sufficient repair, and setting forth in detail how the coal banks, entries, railroad tracks, and drains shall be managed, and further providing for the return of the property described, including the six salt wells, at the termination of the lease to the lessor, his heirs or assigns, in good working order, unless destroyed by fire or unavoidable casualty, not caused by the negligence or carelessness of the lessees, their servants or agents. Can it be presumed that with more than two months' time to examine the property between the date of the lease and the time when the furnace was fired up, the plaintiff would accept and act under said lease, reciting, as it did, the vital and important fact that said premises included six salt wells, when in fact there were only five thereon? And the fact that under these circumstances, which appear on the face of the declaration, the lessees accepted the property under said lease, and actively operated the furnace thereon for more than two years, so far as appears, without any effort on their part to repair said sixth well, negatives the presumption that there was any implied covenant that there were six salt wells of any particular productive capacity on said premises. It appears by averment in the first amended declaration, that this sixth well was being repaired in some way by the the lessor at the time said lease was executed; but the fact that a salt well is out of repair does not prevent it from being a salt well still, any more than a coal bank which is obstructed at some point by fallen slate is no longer a coal bank; and, looking at the face of the lease, we can not say that the recital in the description of the property leased, including six salt wells, implied a covenant that there were six salt wells of any particular productive capacity on said premises, although the averments of the declaration show that there were six salt wells on said premises, one of which was being repaired at the time of the execution of the lease.

For these reasons, we think the plaintiff has shown no cause of action, and the demurrer should have been sustained to the entire declaration; and for the same reasons

we are of the opinion that the Circuit Court committed no error in excluding the plaintiff's evidence from the jury.

The judgment complained of must be affirmed, with costs, etc.