# CHARLESTON.

JOHN RUDMAN v. BOARD OF EDUCATION OF INDEPENDENT
DISTRICT OF RAVENSWOOD.

Submitted October 3, 1922.    Decided October 10, 1922.

1. SCHOOLS AND SCHOOL DISTRICTS—*Board of Education May Negotiate Contract to be Subsequently Adopted in Meeting Duly Convened.*

   Though members of a board of education, acting otherwise than in a meeting duly convened, cannot make a contract, binding the board in its corporate capacity, they may by negotiation determine the elements of a contract to be made by the board, acceptance and adoption of which in meeting will bind it.   (p. 735).

2. SAME—*Informal Minute by School Board as Evidence of Contract Interpreted in Light of Constituent Agreement.*

   An informal minute entered upon its records by such a board, in flexible terms, as evidence of a contract so made, in the absence of the party with whom it was made, is not governed by the rules applicable to written contracts, and is properly interpreted in the light of the constituent agreements made between such party and the representativs of the board.   (p. 735).

3. CONTRACTS—*Where Preliminary Negotiation for Contract Are Reconcilable with Contemporaneous Memorandum of Agreement, it is Enforceable.*

   If the evidence as to the terms and provisions of the preliminary, oral and conditional contract preponderates in favor of the contention of such other party, and the written memorial of the contract entered by the board is easily reconcilable therewith, a motion to set aside a verdict in favor of such other party, found in an action based upon such contract, is properly overruled, in the absence of some good defense other than lack of contract or non-performance by such other party.   (p. 735).

4. LANDLORD AND TENANT—*Lease for Particular Purpose Held in Action for Rent Not Invalid, Because Use as Desired Impossible.*

   Though real estate leased for a particular purpose cannot be used for such purpose, in the manner contemplated by

the terms of the contract, and is abandoned by the lessee, on that ground, if impossibility of its use for such purpose in a different manner is not shown, and there is a verdict for the plaintiff, in an action to recover the rent, a motion to set aside the verdict, on the ground of discharge from the contract, by reason of impossibility of performance thereof, is properly overruled. (p. 737).

Error to Circuit Court, Jackson County.

Action by John Rudman against the Board of Education of Independent District of Ravenswood. Judgment for plaintiff, and defendant brings error. .

*Affirmed.*

J. L. *Wolfe* and M. C. *Archer,* for plaintiff in error.
T. J. *Sayre* and K. K. *Hyre,* for defendant in error.

POFFENBARGER, PRESIDENT:

The judgment under review on this writ of error was re-covered in an action of debt for rent of the ground-floor rooms in a two-story building, for school purposes, and is based upon the verdict of a jury. The defendant, The Board of Education, looks upon the amount recovered against it as something in the nature of blood-money, because the rooms turned out to be unfit for the purposes for which they were rented, and its occupancy and use thereof were discontinued within two weeks after the school started in them. This action was defended upon two grounds: (1) failure of the plaintiff to perform what is alleged to have been a contract respecting the preparation and equipment of the rooms for the purposes for which they were rented; and (2) interven-tion of the law, through the Board of Health of the town of Ravenswood and the Public Health Council of the State, its agencies, by which it is alleged that the use of the property for school purposes was forbidden and prevented; wherefore and whereby the defendant was excused and released from performance of its agreement to pay the rent, even though the contract may have been as claimed by the plaintiff. Though hotly contested, the case was submitted to a jury without instructions. They found for the plaintiff in the

sum of $420.00 and all of the assignments of error go to the action of the court in refusing to set aside the verdict.

Admitting a contract of rental, made about August 8, 1919, the parties differ as to its terms, and the evidence adduced is partly documentary and partly oral.  The defendant relies extensively upon the document, a minute on its records, reading as follows: ''On the report of M. E. Ginther and E. H. Flinn (special committee) that John Rudman would furnish his building on Sand Street with ground for play ground, remove chickens from lot, make necessary changes in building and ground and put same in first-class condition for school purposes; furnish toilets and water and do the janitor work for $540.00 for the school year beginning September 1st, 1919.  On motion the same was accepted.''  The plaintiff bases his case upon his oral agreement with the two members of the special committee, Ginther and Flinn, who, he said, inspected the property and gave him particular instructions as to alterations, improvements and equipments to be made.  Ginther, in his cross examination, substantially concurred with him, as to what was said and done by way of agreement, although he qualified these admissions in his testimony in chief, by the statement that the order entered on the minute book substantially sets forth the terms of the agreement.  Mr. Flinn's testimony is not materially divergent from that of Mr. Ginther.  In their statements as to what was said and done in the colloquy between them and the plaintiff, both of them made a dangerously near approach to admission of the contract as stated by him.

The terms of the order or minute above quoted indicates the character of the property and the conditions surrounding and affecting it.  The ground floor of the building was of considerable dimensions and it was situated in what seems to have been a rather spacious lot.  A year or two before the date of the contract, some part of the building had been used as a stogie factory, and later it seems to have been used for storage purposes.  The ceilings were only about ten feet high and the rooms neither well lighted nor well ventilated. There were no toilet rooms.  The grounds about the build-

ing were used as a chicken lot. It is admitted by all of the
parties to the verbal arrangement, that the plaintiff was to
divide a large room in the building into two, by means of a
partition. In these two with another smaller one three
teachers were to carry on their work. From some of the
rooms, it was necessary to remove shelves and counters. One
of them the plaintiff agreed to ceil over head. A certain
amount of papering and painting was to be done, and a
large window was to be put in one of the rooms. The plain-
tiff testifies that it was understood and agreed, that he was
to construct two outside water closets on the lot, at points
agreed upon with the two members of the board. As to the
chickens, he says it was agreed that he could put them in an
out-building on the lot. Ginther and Flinn say he agreed to
remove them from the lot. As to the closets, they admit that
he told them he would construct outside closets over pits or
vaults dug in the ground; but Flinn, when asked whether
that was the understanding, replied that he could not say
any more about that, and also that he had no recollection of
an agreement to construct walks to the toilets. The plaintiff
made the changes and improvements, in accordance with his
statement of the terms of the contract, at an expense of
about $325. Shortly after he had completed what he says
he agreed to do by way of preperation of the property for its
intended use, there was a large addition to the number of
actors in the play, by which a variety of conflicting duties,
interests and responsibilities were introduced. School
opened in the three rooms with three teachers and more than
a hundred children. Immediately, there were complaints of
inconvenience, discomfort and illness. Protests of pupils,
parents and teachers were fairly rained upon the heads of
the members of the board of education. The odors of tobacco,
the lot and the chicken house were nauseating. As running
water and modern toilets were within the reach of the pro-
prietor and the board of education, the primitive outside
boxes built over vaults or pits dug in the ground were not
to be tolerated. Construction and maintenance thereof were
in violation of town ordinances. The town authorities were

appealed to with the result that, after some preliminary steps, the proprietor was arrested and convicted of violation of an ordinance. The local board of health forbade the use of the closets. Finally, the State Board of Health intervened and declared the property unfit for school purposes. All of this resulted in a speedy discontinuance of the use of the property for such purpose. Within a week or two, rooms elsewhere were procured, the seats taken out of plaintiff's building and removed to them, and, on Sept. 15, 1919, an entry made on the minutes of the Board of Education, reciting condemnation of the property and notification to the owner, of the action of the Board of Health and consequent discontinuance of the use of the building. About that time, a tender of one month's rent was made to the plaintiff, together with the keys of the building, all of which he declined. After the expiration of one year, from the date of the contract, this action was brought for recovery of the rent of the property for a year, at the rate of $35.00 per month, and $10.00 per month for plaintiff's services as janitor.

The conversation between the plaintiff and the special committee appointed by the board to confer with him did not constitute a contract binding upon the defendant, even though they may have completely and fully agreed upon every element of the proposed arrangement. An approval and adoption of it by the board was necessary to consummate it and make it binding. *Limer* v. *Traders Company,* 44 W. Va. 175; *Honaker* v. *Board of Education,* 42 W. Va. 170; *Smith* v. *Cornelius,* 41 W. Va. 68; *Pennsylvania Lightning Rod Co.* v. *Board of Education,* 20 W. Va. 360. In point of phraseology, the contract ratified and confirmed by the board differs somewhat from the oral statement of it by the witnesses; but the two versions of it are not irreconcilable and the divergencies are more apparent than real. More stress is laid upon the stipulation or recital in the order, that the plaintiff was to put the building and grounds in first-class condition for school purposes, than any other. As the plaintiff and the special committee inspected the

property and agreed that certain changes should be made in it, with a view to its use for school purposes, it would not be a violent assumption, to say all of them were of the opinion that, when such changes should be made, the property would be in first-class condition for school purposes. Besides the plaintiff testified that, after he had made those changes, the members of the board came and inspected the property again and expressed their satisfaction therewith. This statement was not denied by either Mr. Flinn or Mr. Ginther. The requirement of the removal of the chickens from the lot may have meant no more than they should be kept in the building in which they were later confined. That would remove them from the lot, but not from proximity to the school room. The undesirableness of their location within six or eight feet of the school room may not have been appreciated at the time, by the members of the committee or the board in the meeting. It is to be observed that the written memorandum of the contract does not specify the kind of closets the plaintiff was to install and it is virtually admitted by Mr. Flinn, and expressly admitted by Mr. Ginther, that they were to be outside closets built over pits or vaults. The olfactory organs of the members of the board were perhaps not as acute and sensitive as those of the female teachers and pupils, wherefore, if they detected odors left by the tobacco and arising from the yard or chicken house, they did not appreciate their effect upon those for whom actual occupancy of the building was intended. . It is obvious, therefore, that the provisions of the order, as to the chickens and as to the fitness of the building, as construed and understood by the members of the board, may be in perfect harmony with the terms and conditions of the oral preliminary agreement which was consummated by the entry of the order. We are clearly of the opinion that the jury could so find and that its finding is so far sustained by the evidence as to preclude disturbance thereof by the court. In the oral evidence, there is a very decided preponderance in favor of the plaintiff, and, as has

been shown, the terms of the order entered can be reconciled with the verbal understanding.

The argument submitted to sustain the theory of a discharge from the contract, by reason of impossibility of its performance, arising out of its nature and terms, is not well founded, even though it were conceded that the principle invoked is applicable to contracts of this kind. The impossibility of performance, if any, was not absolute. It was limited to the manner of performance adopted. The defendant could have put in suitable toilets, and might have been entitled, in that event, to an abatement of rent or damages for breach of the plaintiff's contract. It could easily have had the lot further cleaned up and disinfected. No effort was made to get rid of the chickens or eliminate the tobacco odor from the rooms. Lack of proof of impossibility of performance renders it unnecessary to inquire whether the principle invoked applies in contracts of lease of real estate.

Perceiving no error in the judgment complained of, we will affirm it.

*Affirmed.*