J. E. WILKINSON

*v.*

ADA SEARLS

(13064)

Submitted September 21, 1971. Decided November 23, 1971.

476

*Martorella & Cohen, Joseph G. Martorella, J. J. N. Quinlan, James E. Nelson,* for appellant.

*William Jack Stevens,* for appellee.

CALHOUN, JUDGE:

This case, on appeal from a final judgment of the Circuit Court of Lincoln County, involves a civil action instituted in that court by J. E. Wilkinson, as the plaintiff, against Ada Searls, as the defendant, for recovery of rent alleged to be owed to the plaintiff by the defendant pursuant to the terms of a written lease agreement by which the plaintiff leased to the defendant certain real estate.

By an order entered on September 15, 1970, the trial court awarded a summary judgment in favor of the plaintiff and against the defendant in the amount of $700, representing rent for four months at the monthly rate of $175 specified in the lease agreement. From that judgment, Ada Searls was granted the appeal to this Court.

While the case was pending on appeal, the Court granted to Ada Searls leave to move to reverse the judgment of the trial court pursuant to the provisions of Code, 1931, 58-5-25 and Rule IX of the Rules of this Court. The case was submitted for decision upon the original record made in the trial court; upon the motion to reverse; and upon typewritten briefs and oral argument of counsel.

The basic question presented for decision on this appeal is whether the trial court was justified in holding, pursuant to R.C.P. 56, that the case involved no genuine issue of material fact and that the plaintiff was entitled to judgment against the defendant for $700 as a matter of law. No question has been raised concerning the correctness of the amount of the judgment.

A copy of the lease agreement was filed as an exhibit with and made a part of the complaint. The complaint, which was filed on February 5, 1970, alleged that the lease agreement, dated September 7, 1967, was "made and entered into" by the parties and that rent for the months of January and February, 1970, at the monthly rate of

$175 was then "past due." Accordingly the plaintiff, by the complaint, demanded "judgment of and from the defendant in the sum of $350.00 with interest and costs."

The written lease agreement bears the signature of J. E. Wilkinson, designated as the party of the first part, and the signature of Ada Searls, designated as the party of the second part. By the terms of the lease agreement, J. E. Wilkinson leased to Ada Searls, for a period of four years, "parcels of real estate situate in the Town of Hamlin" in Lincoln County, described in the lease agreement as follows: "That certain two story frame building, and the small two story frame building, adjacent to the large frame building now * * * occupied by the second party as a rest home, known as HILL TOP REST HOME OR TOURIST HOME, including the furnishings therein, * * *." The written lease agreement further provided for monthly rental of $125 for the larger building and $50 for the smaller building; and that the "Second party shall pay for all utilities used by her on said leased premises." The lease contained an additional provision as follows: *"Said premises are to be used as a rest home or for renting of rooms,* and shall not be sublet or sub-rented without the written consent of the first party." (Italics supplied.)

Neither the original answer nor the amended and supplemental answer to the complaint expressly affirmed or denied the making and execution of the written lease agreement previously referred to in this opinion. Neither of these two pleadings filed in behalf of the defendant made any reference whatsoever to the written lease agreement upon which the plaintiff's complaint was based. The amended and supplemental answer alleged, as the first ground of defense, that the complaint failed to state a cause of action upon which relief could be granted.

As a second ground of defense, the defendant alleged in her amended and supplemental answer that leases were "entered into between the parties hereto," on August 14, 1964, on April 1, 1965, and on December 14, 1966, each for a period of one year. In that connection, the defendant made the following allegation: "* * * it was distinctly

understood and was so used by the defendant, with the knowledge and consent of the plaintiff, as a rest and nursing home, and that because of the failure of the plaintiff to comply with the laws of the State of West Virginia in regard to making the premises suitable for said rest or nursing home it became necessary for her to vacate the said premises, which she did after notifying the plaintiff of her intention to do so." The allegation quoted immediately above leaves something to be desired from the standpoint of clarity and specificity.

As a third ground of defense, the defendant made the following allegation in her amended and supplemental answer:

> "That the premises were unfit legally for the purpose for which they were rented and that the plaintiff promised to correct the premises to comply with the laws of the State of West Virginia in regard to a nursing home or rest home. *All of the said leases* were entered into by plaintiff's inducements and because of such representations by the plaintiff." (Italics supplied.)

As a fourth ground of defense, the amended and supplemental answer contains the following language:

> "This defendant, for further answer, says the plaintiff is an experienced lawyer, practicing in the Town of Hamlin, and other cities and towns in the State of West Virginia, and this defendant is without much formal education, and *the so-called leases and agreements* were drawn by the plaintiff in his office, and this defendant had no advice of counsel at any time during the tenure of *said leases, or any of them,* and that the plaintiff was attorney for defendant during this period of time." (Italics supplied.)

By agreement of counsel for the parties, the plaintiff, J. E. Wilkinson, took the discovery deposition of Ada Searls, the defendant, at the courthouse in Hamlin, in Lincoln County, during the afternoon of March 12, 1970. Later, during that afternoon and at the same place, the defendant, Ada Searls took the discovery deposition of

J. E. Wilkinson, the plaintiff. Counsel for the parties were present and participated in the taking of these depositions.

The plaintiff's motion for summary judgment was made in the following language: "To grant the plaintiff summary judgment in his favor for the reason that under the provisions of that certain Lease Agreement between the parties, which Lease Agreement is attached hereto as Exhibit A, there exists no genuine issue of fact as to any material matter as the said Lease Agreement was duly signed by the party to be charged, and is legally sufficient under the laws of the State of West Virginia." The language of the motion tends to indicate that is was based on the proposition that the terms of the lease agreement are clear and unambiguous and that the clearly expressed terms thereof are binding upon the parties.

Notice was served by counsel for the plaintiff upon counsel for the defendant that the motion for summary judgment would be brought on for hearing before the trial court at three o'clock of the afternoon of March 12, 1970. During the afternoon of that day, the parties appeared in person and by counsel in connection with the taking of the discovery depositions of the parties.

The judgment order, entered by the trial court on September 15, 1970, recites that, on that day, the plaintiff appeared in person and by counsel and *moved the court for the entry of an order* granting a summary judgment in favor of the plaintiff. The order further recites that a hearing on the motion for a summary judgment had been held previously by the court on June 11, 1970, at which time the court granted the motion for a summary judgment and that thereafter counsel for the plaintiff, on July 16, 1970, "sent an order to the Court for the Court to enter, rendering said Judgment and which letter and order were never received by the Court." The order thereafter recites that "the Court doth hereby award a Summary Judgment in favor of the plaintiff, J. E. WILKINSON, in the sum of $700.00, representing four months rent due and owing under the terms of the lease agreement, interest and costs, which Judgment is declared to be in full force and effect

from June 11, 1970. To which the defendant by counsel excepted."

The record before this Court does not disclose the precise basis or record upon which the motion for a summary judgment was submitted to the trial court for decision. Apparently the record before the court at that time consisted of the pleadings and the discovery depositions of the parties. The record before this Court does not disclose the nature of contentions made in the trial court on behalf of the respective parties in relation to the motion for a summary judgment. The record fails to disclose what contentions of counsel were sustained or overruled by the trial court in ruling upon the motion. The record reflects no intimation of the reasoning, findings or legal principles which formed the basis of the trial court's action in rendering the summary judgment. The burden is upon the appellant to exhibit on the record before the appellate court the error or errors of which he complains. *Pozzie* v. *Prather,* 151 W.Va. 880, pt. 4 syl., 157 S.E.2d 625.

In the present case, it is unfortunate from our standpoint that the basis of the trial court's reasoning in entering the summary judgment is not reflected by the court order, by a reporter's transcript of the trial court's proceedings or otherwise. In considering the assignments of error made in this Court in behalf of the appellant, we have no means of knowing whether the questions thus raised on appeal were or were not raised in and decided by the trial court. As a general rule, this Court, in the exercise of its appellate jurisdiction, will not consider and decide nonjurisdictional questions which were not presented to and decided by the trial court. *Mowery* v. *Hitt,* 155 W.Va. 103, pt. 1 syl., 181 S.E.2d 334; *Work* v. *Rogerson,* 149 W.Va. 493, pt. 11 syl., 142 S.E.2d 188. It is well settled, nevertheless, that when a case is before this Court on appeal, it makes no difference upon what ground the trial court based its judgment, because always the question on appeal is whether the judgment being reviewed is correct. *State ex rel. Dandy* v. *Thompson,* 148 W.Va. 263, pt. 5 syl., 134 S.E.2d 730.

The action of the trial court in granting a summary judgment apparently was based on the proposition that the terms of the written lease agreement were clear and unambiguous and that, for this reason, no genuine issue of material fact was presented. In reviewing the judgment of the trial court from this standpoint, we are of the opinion that Ada Searls, the defendant, gave testimony in her discovery deposition which was violative of the parol evidence rule. As we have stated previously, the written lease agreement contained the following provision: "Said premises are to be used as a rest home and for renting of rooms, * * *." We are of the opinion that this provision is clear and unambiguous.

In her discovery deposition, the defendant testified that on November 8, 1963, she was employed by the plaintiff on a salary basis of $25 a week to operate the larger of the two buildings as a tourist home, under the name of Hilltop House Tourist Home; that she continued her employment in that capacity for nine months; that, at the end of the period of nine months, the plaintiff decided to discontinue the operation of the tourist home and to "lock it up" because it proved not to be a profitable business; that on August 14, 1964, she leased the building from the plaintiff for $65 a month; that thereafter she continued to lease the premises from the plaintiff by written lease agreements on a yearly basis; that she had four lease agreements with the plaintiff; and that she and the plaintiff entered into the September 7, 1967, lease agreement for four years.

In her discovery deposition, the defendant testified that in August, 1967, she went to the plaintiff's office and in the presence of his son-in-law, she and the plaintiff negotiated the terms of the written lease agreement; that, in the course of these oral negotiations, it was agreed that each party would defray the cost of meeting certain requirements in order to cause the leased premises to conform to the requirements for issuance of a license to Ada Searls for the operation of the rest home; that the plaintiff, during the course of the oral negotiations, agreed to install a

fire escape on one of the leased buildings; that she continued to occupy the leased premises and to pay rent pursuant to the September 7, 1967, lease until October, 1969, which was a period in excess of two years; that, in the meantime, her license had been renewed for ninety-day periods; that the oral negotiations were had on the day the lease was executed; and that she signed the lease because she "didn't doubt his word a bit for I thought it was as good as if it were written down." Ada Searls, the defendant, apparently contends that ultimately she was unable to obtain a renewal or continuance of her license because a fire escape had not been installed on one of the leased buildings and that, in these circumstances, she vacated the leased premises.

In his discovery deposition, J. E. Wilkinson testified that "at no time did I ever tell her I would put a fire escape in that building" and that her testimony of this character was false. He further testified as follows: "She never complied with rest home agreement. It is purely for ambulatory patients and she violated that from the time she went into it until she moved out because she had bed patients, which was completely against the rules of a rest home."

While, in a sense, an issue of fact was presented by the plaintiff's denial that he orally agreed to install a fire escape on one of the leased buildings, we are of the opinion that no "genuine issue of material fact" was thereby presented for the reason that the testimony of Ada Searls in relation to the fire escape was violative of the parol evidence rule. By that testimony, she sought to impose upon J. E. Wilkinson a contractual obligation which was not in any sense expressed in the written lease agreement.

The following is the first point of the syllabus of *State ex rel. Coral Pools, Inc.* v. *Knapp*, 147 W.Va. 704, 131 S.E.2d 81: "An unambiguous written agreement entered into as the result of verbal negotiations will, in the absence of a showing of fraud or mistake, be conclusively presumed to represent the final agreement of the parties thereto, and

parol evidence may not be admitted to prove that the agreement of the parties was different from that expressed in such writing." The same proposition was similarly stated in the first point of the syllabus of *Kanawha Banking and Trust Company v. Gilbert,* 131 W.Va. 88, 46 S.E.2d 225, as follows: "Extrinsic evidence of statements and declarations of the parties to an unambiguous written contract occurring contemporaneously with or prior to its execution is inadmissible to contradict, add to, detract from, vary or explain the terms of such contract, in the absence of a showing of illegality, fraud, duress, mistake or insufficiency of consideration." To the same effect, see *Wyckoff v. Painter,* 145 W.Va. 310, pt. 2 syl., 115 S.E.2d 80; *Shaffer v. Calvert Fire Insurance Company,* 135 W.Va. 153, pt. 2 syl., 62 S.E.2d 699. A valid, unambiguous written contract may be modified or superseded by a subsequent written or parol contract but only if the subsequent contract is based upon a valuable consideration. *Steinbrecher v. Jones,* 151 W.Va. 462, pt. 1 syl., 153 S.E.2d 295; *Lewis v. Dils Motor Company,* 148 W.Va. 515, pt. 1 syl., 135 S.E.2d 597; *State ex rel. Coral Pools, Inc. v. Knapp,* 147 W.Va. 704, 711, 131 S.E.2d 81, 86. If the alleged oral promise to install a fire escape was made prior to or contemporaneously with the making and execution of the written lease agreement, testimony to prove that oral agreement would violate the parol evidence rule and therefore would not be admissible. If such an oral agreement was made after the written lease was executed, the oral agreement was unenforceable and void for the reason that it was not based on a valuable consideration.

In the brief of counsel for Ada Searls, the defendant, the issues presented for decision on this appeal are summarized as follows:

> 1. Whether the trial court erred in granting relief to the plaintiff "where the State Fire Marshal required a fire escape be constructed on the leased premises and where the landlord knew the leased premises was being used as a rest home."

2. Whether there existed "an implied warranty of habitability and fitness of the premises where the subject of the leased premises was a furnished house."

3. Whether the acts of the landlord in not installing the fire escape, as directed by the State Fire Marshal, amounted to a constructive eviction.

4. Whether the trial court erred in granting summary judgment.

We are of the opinion that the trial court did not err in relation to any of the four issues enumerated above. It is true that the leased premises included a furnished dwelling. However, at the time the lease agreement was made and executed, the leased premises were being used by Ada Searls as a rest home, a business enterprise, as distinguished from a mere home. The lease expressly stated that the leased "premises are to be used as a rest home or for renting of rooms." By the terms of the lease, the lessor reserved "the right to remove from the leased premises such items of furniture or other items" as his wife might desire to remove therefrom, in such a manner and to such an extent as not to interfere with the lessee in the use of the leased premises.

It appears from the discovery depositions of the parties that they both knew that a representative of the State Fire Marshal might later require the installation of a fire escape. According to the testimony of Ada Searls, this possibility or likelihood was discussed by the parties during the oral negotiations which formed the basis of the written lease agreement subsequently executed by them. Ada Searls executed the lease agreement with full knowledge that the lessor thereby made no covenant or agreement to install a fire escape. For many years prior to the date of the execution of the lease agreement, and for more than two years thereafter, Ada Searls, as the lessee, used and occupied the leased premises as a rest home without a fire escape on either of the buildings leased to her. This

indicates that the absence of a fire escape did not affect the "habitability" of the leased premises as they were occupied and used by Ada Searls. The record tends to indicate that the installation of the fire escape may have been required because Ada Searls ceased to operate the premises merely as a "rest home" by taking in bedfast patients, or other patients who were not ambulatory, thereby and to that extent converting the leased premises to a "nursing home." In so doing, she violated the terms of the written lease agreement.

The written lease agreement contains no express covenant on part of either party to make repairs, improvements or alterations of the leased buildings. Ada Searls seeks to impose upon J. E. Wilkinson a covenant by implication to install the fire escape. She executed the lease and continued in the use and occupancy of the leased premises with full knowledge that the premises contained no fire escape and that installation of a fire escape likely would be required in the continuance of her use of the premises as a business enterprise. Pertinent to this contention are the statements made in the second, third and fourth points of the syllabus of *Stewart* v. *Raleigh County Bank*, 121 W.Va. 181, 2 S.E.2d 274:

> "A tenant who leases a building, or an apartment therein, assumes the risks attendant upon the conditions existing and which are apparent at the time he takes possession of the leased premises.

> "A landlord is under no duty to advise a tenant of conditions which are apparent.

> "Under the common law no duty rests upon the owner or operator of an apartment building to equip and maintain auxiliary fire apparatus."

*Rudman* v. *Board of Education of Independent District of Ravenswood*, 91 W.Va. 731, 114 S.E. 268, involved a lease of a portion of a building for use as a public school. After the premises were in use for public school purposes, the Board of Health of the Town of Ravenswood and the

Public Health Council of this state forbade further use and occupancy of the building for public school purposes because of a lack of inside toilet facilities and perhaps for other reasons related to public health. The school authorities abandoned the building, whereupon the lessor sued the lessee for rent. In upholding a judgment in favor of the lessor against the lessee for unpaid rent, the Court made the following statement in the fourth point of the syllabus:

> "Though real estate leased for a particular purpose cannot be used for such purpose, in the manner contemplated by the terms of the contract, and is abandoned by the lessee, on that ground, if impossibility of its use for such purpose in a different manner is not shown, and there is a verdict for the plaintiff, in an action to recover the rent, a motion to set aside the verdict, on the ground of discharge from the contract, by reason of impossibility of performance thereof, is properly overruled."

The following statement appears in 49 AM. JUR. 2d, *Landlord and Tenant,* Section 768, pages 705-06:

> "The general doctrine is that on the demise of a house or lands, there is no covenant or warranty implied that the premises shall be tenantable, fit, or suitable for the use for which the lessee requires them, whether for habitation, occupation or business, or cultivation; consequently, their unfitness for such a purpose does not as a general rule constitute an eviction or justify the tenant in abandoning the premises and, on such grounds, making defense to an action for rent. A lessee takes the hired premises, in the absence of an express warranty, or of fraud or misrepresentation, in the condition and quality in which they are. He takes the property as he finds it, with all existing defects which he knows or can ascertain by reasonable inspection, and takes the risk of apparent defects. Thus, as between the tenant and his landlord, where there is no fraud or false representation or deceit, and in the absence of an express warranty or covenant to repair, there is no implied contract or warranty that the premises are suitable or fit for occupation, or for the particular

use intended, or that they are safe for use, even though the lease designates the use to be made of the premises."

In relation to the question of constructive eviction of a tenant, the following general statement appears in 52 C.J.S., *Landlord and Tenant,* Section 455, page 303:

"In order to constitute a constructive eviction of a tenant by his landlord, it is necessary and sufficient that the tenant abandon the premises in consequence of an intentional act or omission of the landlord, or some one acting under his authority or with his permission, that permanently deprives the tenant of the beneficial enjoyment of the demised premises or a substantial part thereof."

A quite recent annotation of the subject of implied warranty of fitness or habitability of leased premises appears in 40 A.L.R.3d beginning at page 646. In 22 A.L.R.3d 521, there appears an annotation dealing with the subject of who, as between landlord and tenant, must make or bear the expense of alterations, improvements or repairs ordered to be made by public authorities. The following language appears at page 525: "Although it has been said that it is impossible to lay down a rule that will precisely fit all cases, it is a well-established principle that the question as to which of the parties to a lease is obligated to comply with an order of a governmental department, agency, or bureau depends primarily upon the intention of the parties as expressed in the lease, or if the lease is silent, upon their presumed intention under all the circumstances in the case." To the same effect, see 49 AM. JUR. 2d, *Landlord and Tenant,* Section 943, pages 917-18.

We are of the opinion that the following additional authorities tend to sustain the correctness of the action of the trial court in awarding the summary judgment against the defendant. *Redden* v. *The James T. McCreery Co., Inc.,* 123 W.Va. 367, 15 S.E.2d 150; *Charlow* v. *Blankenship,* 80 W.Va. 200, 92 S.E. 318; *Clifton* v. *Montague,* 40 W.Va. 207, 21 S.E. 858; *Kline* v. *McLain,* 33 W.Va. 32, 10 S.E. 11.

For reasons stated, and upon the basis of authorities to which reference has been made in this opinion, we are of the opinion that the pleadings, exhibits and discovery depositions of the parties disclose no genuine issue as to any material fact in this case and that the trial court did not err in awarding summary judgment in favor of the plaintiff. *Hanks* v. *Beckley Newspapers Corporation,* 153 W.Va. 834, 172 S.E.2d 816. The motion to reverse is, therefore, denied and the judgment of the Circuit Court of Lincoln County is affirmed.

*Affirmed.*