Louis COFONE, Plaintiff-Appellant,

v.

John R. MANSON, Commissioner, Department of Correction, State of Connecticut, et al., Defendants-Appellees.

No. 673, Docket 78–2150.

United States Court of Appeals, Second Circuit.

Argued Feb. 20, 1979.

Decided March 27, 1979.

Martha Stone, Hartford, Conn., for plaintiff-appellant.

Stephen J. O'Neill, Asst. Atty. Gen., Hartford, Conn. (Carl R. Ajello, Atty. Gen., Hartford, on brief), for defendants-appellees.

Before LUMBARD, OAKES and VAN GRAAFEILAND, Circuit Judges.

LUMBARD, Circuit Judge:

Louis Cofone, a prisoner of the state of Connecticut currently serving a life sen-

tence for murder in the 1st degree, filed suit under 42 U.S.C. § 1983 challenging the legality of his transfer from the state prison at Somers, Connecticut to the federal penitentiary in Atlanta, Georgia. Finding no violation of any federal constitutional right in the circumstances of Cofone's transfer, we affirm the order of Judge Blumenfeld entering judgment for defendant Manson, Connecticut Commissioner of Corrections.

Cofone's transfer grew out of a series of incidents at the Somers Facility connected with inmate efforts to force establishment of a prisoner grievance committee. The incidents date from September 10, 1976, when prison guards were required to break up a fight that erupted in the prison's weight room. On the following day, a group of inmates who believed that the guards had used unnecessary force to quell the disturbance voiced their demand for a full investigation of the incident as well as formation of a prisoner grievance committee by refusing to return indoors after recreation. Though the warden turned down the demand for a grievance committee, he promised a full investigation of the previous day's incident and the inmates returned peacefully to their cells.

In the days following the demonstration prison guards overheard a number of discussions, in which Cofone took an active part, concerning the inmates' demand for a grievance committee. One of the guards reported a prison yard meeting of 28 inmates at which a prison strike was planned for October 12. According to the guard, Cofone at the time "advocated that one way or another there will be a grievance committee, either through electoral vote or due to a prison shutdown."

A few days later a group of about 90 inmates, Cofone included, refused initially to return from the outside recreation yard after recall had been sounded. They did not return inside until they had taken some sort of vote among themselves. Portions of

this meeting were recorded on videotape, but since there was no sound recording the subject of the vote was not known.

On September 19, Cofone and seven other inmates were charged with conspiring to riot as a result of their attempts to organize some form of prison disturbance. Though Cofone denied that he ever advocated any disturbance at the Somers facility, he was found guilty on the conspiracy charge and was sentenced to be confined to punitive segregation for up to 20 days and to administrative segregation for an indefinite period thereafter.

Having been convinced of Cofone's disruptive potential and the consequent need for segregating him from the rest of the prison population, the authorities at Somers began to consider transferring Cofone to another prison. Since Somers was the only maximum security institution in the Connecticut state prison system an out-of-state transfer was thought necessary and, accordingly, Somers officials contacted the U. S. Bureau of Prisons. Shortly thereafter, Cofone was notified that a hearing would be held to determine whether he should be transferred to the federal penitentiary in Atlanta, the facility designated by the Bureau of Prisons.[1]

Cofone was informed that he would be able at the hearing to offer any reasons contraindicating his transfer and, moreover, that he was entitled to be represented by a staff advocate. As his advocate Cofone selected Mr. Raymond LaFountain, alcohol counselor at Somers and Cofone's representative at the earlier disciplinary hearing. Cofone met with Mr. LaFountain shortly before the hearing on October 12. At that time he asked LaFountain to call one of his attorneys to appear at the hearing, but LaFountain explained that he could not do that. Cofone requested no further assistance from LaFountain.

The panel at Cofone's transfer hearing consisted of James Singer and Alex Cybulski, Assistant Wardens, and Richard Orzak,

---

**1.** Selection of a specific prison for a state inmate transferred into the federal system is made by Bureau of Prison officials. Danbury, the only federal prison in Connecticut, is not a maximum security institution.

a Supervisory Counselor who had also served on the panel at Cofone's disciplinary hearing. The hearing lasted for about one hour and 20 minutes. Cofone did not request an opportunity to call witnesses, but argued that a transfer would injure his position in pending litigation, end a relationship he had developed with a psychiatrist at Somers, and prevent him from visiting with his two daughters who lived in Connecticut.[2] Cofone also produced a five page typewritten statement that he had prepared for the hearing. In it he asked for a continuance to allow him to consult with an attorney, to see the Commissioner's comments on his disciplinary hearing report, and otherwise to prepare for the transfer hearing.

After deliberating for approximately 15 minutes the panel announced that it would recommend Cofone's transfer. Commissioner Manson promptly approved that recommendation, concluding that the transfer would protect ". . . the security of the institution, the welfare of the inmates, and the staff in the institution against the dangers that Mr. Cofone obviously presented in terms of getting his way, as it were, at virtually any cost, including prison shutdown." An additional reason for the Commissioner's approval of the transfer was that ". . . Mr. Cofone would be a longtime prisoner in segregation at Somers. We don't like that to occur if we can help it. We'd prefer to get him in general population in another facility." Immediately after the transfer recommendation was approved, Cofone was turned over to the custody of a Bureau of Prisons travel team

which then transported him to the federal penitentiary in Atlanta.

On October 14, 1976, Cofone brought the present action in the District Court for Connecticut, alleging that his transfer to the federal penitentiary in Atlanta was a denial of his constitutional rights to due process of law and freedom of speech. After a trial on the merits, Judge Blumenfeld concluded that Cofone's transfer was not improper and entered judgment for defendant Commissioner Manson.

■ Cofone's argument on appeal has been narrowed to the claim that his transfer was a deprivation of liberty without due process of law.[3] Of course, the threshold question with respect to such a contention is whether the challenged action abridged an interest "encompassed by the 14th Amendment's protection of liberty . . ." *Board of Regents v. Roth,* 408 U.S. 564, 569, 92 S.Ct. 2701, 2705, 33 L.Ed.2d 548 (1972). Though Cofone concedes that a transfer from one prison facility to another does not in itself constitute a deprivation of liberty protected by the Due Process Clause, *see Meachum v. Fano,* 427 U.S. 215, 224–25, 96 S.Ct. 2532, 49 L.Ed.2d 451 (1976),[4] he argues that Connecticut prisoners have a liberty interest against out-of-state transfer because Connecticut law and administrative practice significantly limit the power of state prison officials to order such transfers.

■ As Cofone points out, the Supreme Court has recognized that a prisoner's transfer may infringe a Due Process Clause liberty interest where there exists

2. There is some basis for questioning the sincerity of Cofone's professed reasons for resisting transfer. Records at Somers indicated that since 1970 Cofone had never visited with one of his two daughters and had visited with the other only four times, all largely at the instigation of Somers officials.

3. Cofone has dropped the arguments that his transfer abridged his First Amendment rights and that it deprived him of due process of law because it violated the Connecticut Department of Correction's own regulations.

4. Unlike the present case, *Meachum v. Fano* involved a transfer from a state prison to an-

other facility within the state prison system. Cofone has not argued, however, nor do we believe he could with any success, that the outcome in that case would have been different had the Court been confronted with an interstate transfer. The discretion of prison officials recognized by the Court would seem sufficiently broad to cover interstate as well as intrastate transfers. At the same time, we note that the fact that a transfer is interstate or involves a great distance may have bearing on whether state law creates a liberty interest sufficient to implicate the Due Process Clause.

"some right or justifiable expectation rooted in state law that he will not be transferred except for misbehavior or upon the occurrence of other specified events." *Montanye v. Haymes,* 427 U.S. 236, 242, 96 S.Ct. 2543, 2547, 49 L.Ed.2d 466 (1975), citing *Meachum v. Fano, supra.* In claiming that Connecticut law creates such a right or expectation, Cofone relies primarily on Conn.Gen.Stat. § 18–91(a), which authorizes the Commissioner of Corrections to transfer state prisoners into federal custody:

> ". . . *The Commissioner may enter into and execute a contract or contracts with the United States for the removal of any inmate from any institution of the department to a federal correctional institution or medical center when, in his opinion, the inmate needs particular treatment or special facilities available at such correctional institution or medical center, or it is in the best interest of the state.*" (emphasis added)

Emphasizing the italicized language, Cofone argues that § 18–91(a) conditions the federal out-of-state transfer of a Connecticut prisoner on "two very definite findings:" The inmate's need for special facilities or the best interests of the state.

In fact, however, it is difficult to imagine a broader grant of authority than that contained in § 18–91(a). By authorizing transfers "in the best interest of the state," the statute simply makes express a standard that would presumably govern the Commissioner's exercise of any of his discretionary powers. The reference to the Commissioner's opinion only underscores the wide discretion granted him by the Connecticut legislature. In short, § 18–91(a) provides no basis for Cofone's contention that he had a right or justifiable expectation that he would not be transferred absent misbehavior or some other specified event.

Cofone also points to Conn.Gen. Stat. § 18–78a(b) as supporting his alleged liberty interest against transfer. § 18–78a(b), which exempts the Connecticut Department of Corrections from certain requirements of the state's Administrative Procedure Act, provides:

> "In cases involving disciplinary action, classifications and out-of-state transfers, the department of correction shall not be required to follow the procedures of sections 4–177 to 4–182, inclusive, provided all procedural safeguards are afforded at such hearings to insure due process of law."

Although the intendment of § 18–78a(b) may be ambiguous regarding what, if any, specific procedural safeguards Connecticut officials must observe before transferring a state prisoner,[5] it is clear that the statute is not the source of a liberty interest protected by the Due Process Clause. Although a Due Process Clause liberty interest may be grounded in state law that places substantive limits on the authority of state officials, no comparable entitlement can derive from a statute that merely establishes procedural requirements. *See Lake Mich. Col. Fed. of Teach. v. Lake Mich. Com. Col.,* 518 F.2d 1091, 1095–96 (6th Cir.), *cert. denied,* 427 U.S. 904, 96 S.Ct. 3189, 49 L.Ed.2d 1197 (1976); *Suckle v. Madison General Hospital,* 499 F.2d 1364, 1366 (7th Cir. 1974). *See also Lombardo v. Meachum,* 548 F.2d 13, 15–16 (1st Cir. 1977). *Cf. Arnett v. Kennedy,* 416 U.S. 134, 94 S.Ct. 1633, 40 L.Ed.2d 15 (1974). Since § 18–78a(b) at most directs Connecticut officials to follow certain procedures in deciding whether to transfer Cofone, and does not substantively restrict their authority to order the transfer, it cannot be the source of any right or justifiable expecta-

---

5. As Judge Blumenfeld concluded below, § 18–78a(b)'s reference to "all procedural safeguards" necessary to "insure due process" was an apparent response to the now discredited dictum in *Croom v. Manson,* 367 F.Supp. 586, 590 (D.Conn.1973), that the Due Process Clause applies to prisoner transfers. *See* 1974 Conn. General Assembly, House Proceedings, Vol. 17, Part 6 at 3037–38 (April 22, 1974)

(Remarks of Rep. Neiditz: § 18–78a(b)'s exempts Department of Correction disciplinary, classification and out-of-state transfer proceedings from Connecticut Administrative Procedure Act, but insures due process safeguards recognized in "Federal case law." Provisions of Administrative Procedure Act not needed in this area, but "inmates still have their rights in Federal courts").

tion on Cofone's part that he would not be transferred absent misbehavior.[6]

Cofone's final argument in support of a liberty interest against transfer is the asserted administrative practice of Connecticut prison officials not to transfer inmates except for misbehavior. But while it is true that state administrative practice may be relevant to the scope of an inmate's justifiable expectations, appellant here has failed to present any substantial evidence of a sustained or consistent practice such as would have justified him in believing that he would not be transferred except for misbehavior.[7]

In concluding, we note with the Court in *Meachum v. Fano, supra,* that transfers between institutions "are made for a variety of reasons and often involve no more than informed predictions as to what would best serve institutional security or the safety and welfare of the inmate." 427 U.S. at 225, 96 S.Ct. at 2538. Were we to hold the Due Process Clause applicable to the out-of-state transfer of Connecticut prisoners we would "place the Clause astride the day-to-day functioning of state prisons and involve the judiciary in issues and discretionary decisions that are not the business of federal judges." *Id.* at 228–29, 96 S.Ct. at 2540.

Although our holding that no Due Process Clause liberty interest exists makes it unnecessary to determine whether Cofone's transfer comported with constitutional due process guarantees, Connecticut officials appear to have had ample justification for transferring Cofone to another facility and they undertook to effect that transfer in a wholly responsible manner. The judgment of the District Court is affirmed.

6. For the same reason, there is no merit to Cofone's argument that Chapter 4.7b of the Department of Correction's Administrative Directives, which establishes certain procedures for involuntary interstate transfers, gives rise to a Due Process Clause liberty interest.

7. In fact, what evidence there is in the record suggests quite the opposite. Commissioner

Manson testified at the hearing before Judge Blumenfeld that "troublemaker inmates" were not often transferred and that the most common reasons for interstate inmate transfers were to move a prisoner closer to his family or to remove him for his own protection from a facility where he had become known as an informer.