INTERNATIONAL SOCIETY FOR KRISHNA CONSCIOUSNESS, INC., Plaintiff-Appellant and Cross-Appellee, *v.* THE CITY OF EVANSTON, Defendant-Appellee and Cross-Appellant.

First District (2nd Division)    No. 79-501

Opinion filed September 30, 1980.—Rehearing denied October 28, 1980.

702

Edward T. Stein, of Singer & Stein, of Chicago, for appellant.

Jack M. Siegel, of Chicago, for appellee.

Mr. JUSTICE DOWNING delivered the opinion of the court:
In a civil rights action brought under 42 U.S.C. §1983 (1976), involving what is essentially a zoning dispute, plaintiff International Society for Krishna Consciousness, Inc. (Krishna), charged that defendant City of Evanston (Evanston) violated Krishna's constitutional rights of due process and equal protection by its actions concerning Krishna's

application for a special use permit for its property located in Evanston. Early in the proceedings, the trial court entered summary judgment for Evanston, and Krishna appealed to this court. In *International Society for Krishna Consciousness, Inc. v. City of Evanston* (1977), 53 Ill. App. 3d 443, 368 N.E.2d 644 (*Krishna I*), we reversed the trial court and remanded the case for trial. Trial was held. The trial court found that Evanston had violated only Krishna's procedural due process rights by its activities. Nominal damages ($1) were awarded and a mandatory injunction requiring Evanston to issue a special use permit to Krishna was entered. Both parties appealed.

On review, the parties ask us to decide whether (1) the trial court erred in finding that Evanston violated Krishna's procedural due process rights or in failing to find that Evanston violated Krishna's substantive due process and equal protection rights, (2) the trial court erred in entering an injunction requiring Evanston to issue a special use permit containing certain conditions which Krishna claims are illegal, and (3) the trial court erred in failing to award Krishna compensatory damages or to grant attorney's fees allegedly available under a Federal statute.

Krishna took leasehold possession in October 1972 of property located in an area zoned by Evanston for commercial uses. At the time a special use permit was required in order to use the property as desired (temple, theological school, and residence). Application was made by Krishna for this permit. Seventeen months later, Evanston passed an ordinance granting the special use permit to Krishna conditioned, among other things, upon the correction of all existing building code violations within 180 days.

In September 1974, seven days before this time period was to expire, Krishna petitioned Evanston for an extension of time to correct the violations. Prior to receiving the extension, Krishna entered into various contracts for work necessary to achieve code compliance "in anticipation" of the requested extension.

On November 4, 1974, Evanston did in fact grant an extension which was to have been valid until February 15, 1975. One week after the extension was granted, on the advice of Evanston's corporation counsel and without notice and hearing to Krishna, the extension was rescinded. Krishna thereafter was notified of the action. The effect was to render much of the work intended to be done under the contracts impossible due to the subsequent impossibility of procuring building permits.

Nevertheless, Krishna continued use of the premises and entered into an installment land contract to buy the property in February 1975. Three months later, application for a second special use permit was filed with Evanston. The latter undertook "standard" procedures on this application, including public hearings before the zoning board of appeals as

well as legislative hearings before Evanston's Planning and Development Committee of City Council. The recommendations of these two bodies regarding the application were diametrically opposed. On September 13, 1976, Evanston accepted the recommendation of the latter group and denied the application. This court action resulted from Evanston's ensuing order to Krishna to vacate the premises for violation of the zoning ordinance.

At trial following this court's reversal of an earlier-granted summary judgment for Evanston (*Krishna I*), Krishna called numerous and varied witnesses. Several witnesses described the practices of the Krishna movement, apparently to demonstrate that Krishna qualified as a religious group, to bolster its constitutional arguments. A contractor and an architect testified to dealings with Krishna concerning work to be done in order to put the property in compliance with the building code pursuant to the conditions of the special use permit. Members of Krishna's management staff also testified about these transactions and about dealings with Evanston in the effort to secure approval for the permanent use of the property. One of Krishna's attorneys testified as to litigation expenses incurred in this process. An appeals officer from Evanston's Department of Amendments and Appeals testified as part of Krishna's unsuccessful attempt to prove a contrast between the treatment given Krishna's application and that given other special use permit applicants. (The trial court did not allow this last evidence into the record.)

Evanston called a real estate consultant, two building inspectors, and residents of the locale of Krishna's property. Evanston apparently called these witnesses because it was proceeding to trial solely on the theory that it need only justify the denial of the second special use application. However, it must be pointed out that at no time was this proceeding undertaken as a typical zoning case (*e.g.*, administrative review, declaratory judgment, or mandatory injunction). Rather, this action was clearly brought and tried under Federal statute for the alleged violation of Krishna's constitutional rights by Evanston.

The closing arguments to the trial court indicated that, as then noted by Krishna's attorney, the parties had conducted two separate cases, neither of which was very responsive to the other. The trial court, in a detailed and thoughtful judgment memorandum, found that Evanston had violated only Krishna's procedural due process rights through the revocation of the extension of the initial special use permit without prior notice or hearing, and that the evidence did not show this action of Evanston to have been taken in bad faith. An award of nominal damages was entered as well as a mandatory injunction directing Evanston to again issue a special use permit of similar nature as that permit originally granted to Krishna.

At oral argument before this court, Krishna's attorney responded to

inquiry that they had never approached Evanston during the ensuing period to obtain the permit ordered to issue by the trial court. Evanston's counsel then informed this court that Krishna had in fact vacated the property in question approximately two months prior to oral argument. Asked to verify this fact, Krishna's attorney admitted that Krishna had vacated the property, but stressed that the group still held legal title thereto.

## I.

Krishna contends that the trial court erred in failing to find that Evanston violated its substantive due process rights and its equal protection rights in addition to its procedural due process rights when Evanston revoked and did not reissue a special use permit. Evanston counters with the argument that it violated none of these rights.

## A.

■■ Before this court will address itself to the merits of a party's contention, it must be assured that some purpose will be served by its ruling thereupon. This court will consider only actual controversies. We will not declare rules of law which can have no beneficial impact upon the party seeking relief. *Bluthardt v. Breslin* (1979), 74 Ill. 2d 246, 250, 384 N.E.2d 1309; *DuPage Trust Co. v. City of Wheaton* (1976), 38 Ill. App. 3d 159, 161-62, 347 N.E.2d 752, *appeal denied* (1976), 63 Ill. 2d 556.

■■ Krishna asks this court to consider its substantive due process claim.[1] However, Krishna admitted at oral argument that the property upon which this entire cause of action is based is no longer occupied by the group, but now stands vacant. Regardless of this court's ruling on the validity of the Evanston zoning ordinance in question in responding to this issue, no benefit therefrom will befall Krishna. We therefore decline to rule upon this contention, instead holding it to have become moot.[2]

## B.

The United States Supreme Court has set out the test to be applied

---

[1] Substantive due process, generally speaking, requires that a State enact reasonable legislation capable of reasonable application when it seeks to deprive a person of life, liberty, or property for the health, safety, welfare or morals of the community. The focus of this type of constitutional scrutiny of governmental activity is on the substantive legislation itself. Arbitrary laws infringing on constitutionally protected rights are proscribed; if such laws are enacted they will be struck down. *Anderson v. Wagner* (1979), 61 Ill. App. 3d 822, 826, 378 N.E.2d 805, *aff'd* (1979), 79 Ill. 2d 295, 402 N.E.2d 560. See generally Annot. (1954), 98 L. Ed. 851, 852 & n.5; 16 Am. Jur. 2d *Constitutional Law* §816 (1979).

[2] Due to the nature of the argument propounded by Krishna here, we do feel constrained to comment upon its efficacy and thereby hopefully avoid any confusion. In its appellate briefs, Krishna's argument focused upon the actions taken or the methods used by Evanston in the course of the permit application proceedings. While Krishna's second amended complaint and several trial-level briefs argued that Evanston's zoning ordinance was void on its face due to constitutional infirmities (an attack which would fall within

when a contention is made on equal protection grounds that a law is being applied in a discriminatory manner.

> "The unlawful administration by state officers of a state statute fair on its face, resulting in its unequal application to those who are entitled to be treated alike, is not a denial of equal protection unless there is shown to be present in it an element of intentional and purposeful discrimination. * * * A discriminatory purpose is not presumed * * *; there must be a showing of 'clear and intentional discrimination.'" (*Snowden v. Hughes* (1943), 321 U.S. 1, 8, 88 L. Ed. 497, 503, 64 S. Ct. 397, 401.)

See also *Jackson v. Marine Exploration Co., Inc.* (5th Cir. 1978), 583 F.2d 1336, 1347.

In assessing Krishna's equal protection violation claim, the trial court was faced with an evidentiary problem. Krishna sought at trial to demonstrate the alleged disparate treatment by Evanston between itself and other so-called "similarly situated" properties. Upon Evanston's objection, an offer of proof was made. The offer substantively consisted of the procedures utilized by Evanston upon the following properties: a request to retain a special use permit on a nursery school in an area zoned U-2 (Krishna's property is zoned C-2), a request for a special use permit to make additions to a retirement home in an area zoned R-5, and a request for a special use to convert a residence to a synagogue in an area zoned R-1. (Other properties were referred to, but the foundation for those situations was so lacking that they do not merit consideration here.) The court rejected the offer of proof and sustained the objection of Evanston, reasoning that the differences in the uses and the zoning classifications between the properties made the evidence irrelevant and immaterial.

■■■ Krishna attacks this decision, arguing that the trial court had a "highly restrictive, narrow perspective" which rendered proof on this claim impossible. This contention lacks merit. Equal protection theory is not so extensive as to encompass a comparison of nonsimilar circumstances to demonstrate unequal treatment.[3] The mere fact that a property owner has applied for a special use permit does not place the applicant within a single class which can serve as a model to which all special use

---

substantive due process theory), that theory was not the basis of any evidence presented at trial. At oral argument before this court, Krishna's attorney explicitly stated that they had waived any contention regarding the facial invalidity of the zoning ordinance. Neither does Krishna challenge the validity of legislation requiring religious facilities to acquire special use permits in order to operate in certain limited areas where they are zoned as nonpermitted uses. Therefore, we are unable to find a cognizable substantive due process issue in Krishna's argument to this court.

[3] For a general discussion of the parameters of equal protection theory, see *Hartford Steam Boiler Inspection & Insurance Co. v. Harrison* (1937), 301 U.S. 459, 461, 81 L. Ed. 1223, 57 S. Ct. 838; *Kentucky Finance Corp. v. Paramount Auto Exchange Corp.* (1923), 262

application proceedings must conform. We are of the opinion that the trial court correctly excluded the evidence found in Krishna's offer of proof. The trial court had no evidentiary basis in the record upon which to find that Evanston had demonstrated clear and intentional discrimination in its treatment of Krishna's special use permit application. The trial court therefore correctly ruled that Krishna had failed to prove violation of its equal protection rights by Evanston.

## C.

■■ Procedural due process is a constitutional right which requires, at a minimum, that a party be given notice and a hearing at a meaningful time and in a meaningful manner when government action is to affect that party's constitutionally recognized rights. (*Fuentes v. Shevin* (1972), 407 U.S. 67, 80, 32 L. Ed. 2d 556, 92 S. Ct. 1983.) It is Krishna's contention that Evanston denied Krishna's procedural due process rights when the city council of Evanston passed an ordinance extending the life of Krishna's special use permit and then one week later summarily revoked that extension.[4]

The cause of action pursued by Krishna against Evanston on this matter constitutes a claim for relief from what has become known as a "constitutional tort." This term has been used to describe an area of the law encompassing that which is not quite a private (common law) tort, but which contains tort elements; it is not a "constitutional law" matter per se, but it employs a constitutional test. (See Shapo, *Constitutional Tort*: Monroe v. Pape, *and the Frontiers Beyond*, 60 Nw. L. Rev. 277, 323-24 (1965).) Involved in such a claim is an alleged deprivation of one of the rights secured by the Constitution (the tort) by one acting under color of State law. See *Monroe v. Pape* (1961), 365 U.S. 167, 5 L. Ed. 2d 492, 81 S. Ct. 473.

Krishna pursued its claim for the alleged violation of its procedural due process rights under section 1983. That provision creates a species of tort liability in the alleged "constitutional tortfeasor." (*Imbler v. Pachtman* (1976), 424 U.S. 409, 417, 47 L. Ed. 2d 128, 135-36, 96 S. Ct. 984, 988-89.) The central purpose of that statute is to provide a remedy in the

---

U.S. 544, 550, 67 L. Ed. 1112, 43 S. Ct. 636; *Polar Ice Cream & Creamery Co. v. Andrews* (N.D. Fla. 1962), 208 F. Supp. 899, 903, *rev'd on other grounds* (1964), 375 U.S. 361.

[4] Evanston does not take issue with the question of whether Krishna has a constitutionally recognized interest here which falls within the ambit of protection provided by the due process clause of the fourteenth amendment. For the purposes of this case only, then, we will assume that the issuance of the original permit, coupled with the later extension of it, created a protectible property interest in Krishna. Thereafter, under this assumption, Evanston could affect that interest only by actions consonant with the due process protections of the Constitution. We explicitly wish to make clear, however, that this assumption is made only as to the particular facts of this specific case, and that we are in no way ruling that a constitutionally recognized property interest exists in all zoning cases involving the issuance of a special use permit. That question is left for another day.

law to those who are able to prove that they have suffered such a constitutional tort. *Carey v. Piphus* (1978), 435 U.S. 247, 254, 55 L. Ed. 2d 252, 98 S. Ct. 1042; *Imbler v. Pachtman* (1976), 424 U.S. 409, 433, 47 L. Ed. 2d 128, 145, 96 S. Ct. 984, 996 (White, J., concurring).

In deciding the merits of some types of actions brought pursuant to section 1983, principles of common law torts are often directly analogized to define, among other things, the scope of recovery available to the successful plaintiff. In other cases under that statute, the analogy cannot be drawn, and instead the common law tort rules must be adapted to the constitutional area so as to provide fair compensation for injuries caused by the deprivation of a constitutional right. (*Carey v. Piphus* (1978), 435 U.S. 247, 255-59, 55 L. Ed. 2d 252, 259-62, 96 S. Ct. 1042, 1047-50.) The Supreme Court in *Carey* has examined the applicability of these remedial rules of common law to procedural due process claims such as that involved in this case. It has concluded that substantial compensatory damages are available only when "actual injury" is proven. In the absence of such proof, the claim remains actionable, however. Procedural due process rights are viewed as being "absolute" in a sense, because of their importance to organized society. Thus, deprivation of such rights, even without a showing of actual injury, nevertheless requires vindication of those rights through the award of nominal damages. (*Carey v. Piphus* (1978), 435 U.S. 247, 266, 55 L. Ed. 2d 252, 266-67, 96 S. Ct. 1042, 1053-54.) With this background in mind, we now examine Krishna's claim for relief based on Evanston's alleged procedural due process violation.

At both the trial level and before this court, Evanston attempted to justify its summary revocation of the special use permit extension by referring to the advice given by its corporation counsel. Counsel advised the city council of Evanston that a public hearing was necessary before the "extension" ordinance could be enacted, as that ordinance was in reality an amendment and not merely an extension of the prior ordinance. Counsel believed that, since a hearing had not been held, the "extension" ordinance passed here was invalid.

■■ In *Krishna I*, 53 Ill. App. 3d 443, 453, we ruled that this was not a sufficient justification for Evanston's summary revocation of the extension. At no time subsequent to that ruling has Evanston offered any alternative justification for its revocation action. We therefore conclude that Evanston was not justified in proceeding as it did, and that the revocation constituted a violation of Krishna's procedural due process rights which was actionable in a court of law.

At trial, Krishna was unable to adequately prove any actual injury resulting from this violation. Therefore, under the principles announced in *Carey*, Krishna could not recover any compensatory damages for this constitutional tort. However, as stated in *Carey*, procedural due process

rights are "absolute," and thus Krishna retained a valid argument that it was yet entitled to an award of nominal damages. The trial court assessed this claim, found it valid, and awarded Krishna $1 as relief to vindicate its procedural due process rights.

■■ Initially, then, it would appear that this finding of the trial court was correct. However, there remains for discussion a matter of central importance to final resolution of this action which, for reasons not readily apparent, was not raised or discussed by either party in the briefs to this court. Our research indicates that, in cases of this type under section 1983, the mere proof of a violation of one party's constitutional due process rights by another party does not automatically entitle the former to a remedy as against the latter. Numerous Federal court decisions in this Federal circuit have indicated that there is no remedy available in a section 1983 action which is based upon the mere negligence of the defendant resulting in a violation of the plaintiff's protected rights.[5] (See *Beard v. Mitchell* (7th Cir. 1979), 604 F.2d 485, 494; *Jamison v. McCurrie* (7th Cir. 1977), 565 F.2d 483, 486; *McDonald v. Illinois* (7th Cir. 1977), 557 F.2d 596, 601-02, *cert. denied* (1977), 434 U.S. 966, 54 L. Ed. 2d 453, 98 S. Ct. 508.) Rather, the plaintiff must demonstrate that the defendant has violated his rights in a malicious or reckless manner. This is true when the defendant is a municipal corporation as well as in any other case. (*Stringer v. City of Chicago* (N.D. Ill. 1979), 464 F. Supp. 887, 889-90.) In this case, the trial court found that there was not sufficient evidence to indicate any bad faith on the part of Evanston in revoking the extension ordinance. Krishna did not attack or refute that finding before this court. We therefore hold that Krishna has failed to meet its burden of proof under a section 1983 action in failing to prove any intentional, malicious, or reckless conduct by Evanston when it circumvented Krishna's procedural due process rights.[6]

---

[5] As yet, the United States Supreme Court has not analyzed the question of whether simple negligence can give rise to liability under section 1983. See *Baker v. McCollan* (1979), 443 U.S. 137, 140, 61 L. Ed. 2d 433, 99 S. Ct. 2689.

[6] *Stringer* makes reference to the "closely related doctrine" of qualified immunity which, at the time of that decision, was arguably available to a municipal defendant as an alternate basis with which to avoid liability in a section 1983 action. (*Stringer*, 464 F. Supp. 887, 890 n.3.) The United States Supreme Court decision which allowed actions to be brought against municipalities under section 1983, *Monell v. Department of Social Services* (1978), 436 U.S. 658, 701, 56 L. Ed. 2d 611, 98 S. Ct. 2018, had left the question open. However, last term the Court directly faced the issue of municipal immunity and held that a municipality could *not* assert the good faith of its officers or agents as a defense to liability under section 1983. Municipalities now have no immunity in a section 1983 action from damages flowing from their constitutional violations. (*Owen v. City of Independence* (1980), 445 U.S. 622, 63 L. Ed. 2d 673, 100 S. Ct. 1398.) Thus, had Krishna met its initial burden of proof and demonstrated that Evanston had acted in an intentional, malicious, or reckless manner, the latter would have been unable to escape liability on any good-faith immunity basis.

In light of this determination, it is apparent that the trial court erred in awarding even nominal damages to Krishna, since Krishna failed to meet the preliminary proof requirements which must be satisfied before any consideration of remedy can be made. We therefore vacate the award of nominal damages. In addition, we also must dissolve the injunction mandating the issuance of a special use permit, which was entered upon the same basis as the nominal damages award.[7] Since the injunction is to be vacated, we need not respond to Krishna's contention concerning the validity of the conditions attached to the initial special use permit by Evanston. That issue has become moot; our ruling thereupon would serve no purpose.

## II.

Krishna contends that the trial court erred in awarding only nominal damages and in failing to award compensatory damages or grant attorney's fees pursuant to the Attorney's Fees Awards Act of 1976 (42 U.S.C. §1988 (Supp. 1980)).

In light of our holding above that Krishna has not succeeded in adequately meeting the proof requirements under section 1983 for either due process claim or for the equal protection claim, it is evident that Krishna can have no valid argument for an award of compensatory damages.[8]

■■ Section 1988 authorizes the trial court in its discretion to award reasonable attorney's fees to the prevailing party in an action to enforce any rights recognized under the Civil Rights Act of 1871 (42 U.S.C. §1981 *et seq.* (1976)). The impact of our holding above is to remove from Krishna any designation as the prevailing party in the case.[9] It thus becomes apparent that Krishna does not initially qualify for consideration for such an award. There is no need for us to address their argument on this issue.

## III.

Although they were not brought into issue by the parties, the pleadings filed by Krishna in this case require our examination and

---

[7] In the interim period between the trial court's entry of its judgment and the oral argument held before this court, Krishna admittedly made no efforts whatsoever to have Evanston comply with the injunction. Additionally, Krishna vacated the premises in the spring of 1980. Thus, the injunction would no longer serve a purpose and we would be required to dissolve it in any event.

[8] We note that Krishna no longer occupies the premises in question. Thus, even had the trial court's decision on the procedural due process issue been affirmed, the claim for actual damages based upon the increased costs in renovating the structure has been rendered moot.

[9] Since the matter is not yet before us, we express no opinion as to the availability of a section 1988 award to Evanston as the prevailing party under our decision.

comment. Following our decision in *Krishna I*, a second amended complaint encompassing seven counts was filed by Krishna. The counts in total contained 48 numbered paragraphs running 11 pages.[10] Five of the counts each prayed for both declaratory and injunctive relief. We note that the Civil Practice Act of this State (Ill. Rev. Stat. 1979, ch. 110, par. 1 *et seq.*) requires a plain and concise statement of the pleader's causes of action, with each stated in a separate count, separately pleaded, designated and numbered (Ill. Rev. Stat. 1979, ch. 110, par. 33(1), (2)). In our opinion, Krishna's complaint failed to meet these requirements of the Civil Practice Act. Since Evanston did not raise this issue before this court, our comments here have no substantive effect on the validity of Krishna's complaint. (Ill. Rev. Stat. 1979, ch. 110, par. 42(3); *Casati v. Aero Marine Management Co.* (1976), 43 Ill. App. 3d 1, 7, 356 N.E.2d 826.) We nevertheless make them in order to stress to the practicing bar the need to recognize the differences between pleadings in Illinois courts under the Civil Practice Act and in Federal court under the Federal Rules of Civil Procedure (Fed. R. Civ. P. 8(a)). This difference is especially relevant in an action brought in State court under a Federal law, such as the present section 1983 proceeding. Notice pleading allowed under the Federal rules is not sufficient under the CPA. (See Ill. Ann. Stat., ch. 110, par. 33, Historical and Practice Notes, at 375 (Smith-Hurd 1968).) The trial courts should not hesitate to dismiss an action, upon motion, which fails to meet the stricter pleading requirements of the Civil Practice Act.

For the foregoing reasons, the injunction entered by the circuit court of Cook County is dissolved and the finding in favor of Krishna on the procedural due process claim is reversed. The remaining findings of the trial court are affirmed.

Affirmed in part; reversed in part.

PERLIN, P. J., and STAMOS, J., concur.

---

[10] Counts I and II alleged that Evanston sought to proscribe Krishna's religious activities in violation of the first and fourteenth amendments to the Constitution. Count III alleged that Evanston's zoning ordinance was void on its face under substantive due process theory. Count IV alleged that Krishna's equal protection and due process rights were violated by Evanston's denial of Krishna's second special use permit application. Count V alleged that this action was without any basis in fact. Counts VI and VII alleged separate actions at law for damages based upon Evanston's alleged wilful, malicious interference with Krishna's property rights, business affairs, and free exercise of religion.