297 S.E.2d 424

**J.W. GRADY, et al.**

v.

**CITY OF ST. ALBANS, etc.**

**No. 14745.**

Supreme Court of Appeals of
West Virginia.

Sept. 21, 1982.
Dissenting Opinion Oct. 26, 1982.

McGraw, J., dissented and filed opinion in which Harshbarger, J., joined.

Boettner & Crane and John Boettner, Jr., Charleston, for appellants.

Herbert W. Bryan, St. Albans, Martin C. Bowles, Charleston, for appellees.

MILLER, Chief Justice:

This is an appeal by J.W. and Alberta Grady, J.W. Gray, and J.F. and Rada Finley from a final order of the Circuit Court of Kanawha County entered May 15, 1979, granting their motion for a summary judgment, but denying them damages.

The appellants originally brought this action seeking to set aside a zoning ordinance of the City of St. Albans, the appellee, as adopted by the City Council on February 1, 1971. The appellants alleged in their complaint that the appellee acted illegally in adopting the ordinance without first holding public hearings and without giving notice of the dates, times, and places of such hearings as required by W.Va.Code, 8–24–44. The appellants sought declaratory and injunctive relief as well as damages incurred as a result of the illegal zoning of their neighborhood from residential to commercial.

The circuit court granted the appellants' motion for a summary judgment, finding as a matter of law that the failure of the City Council to provide public hearings and notice thereof constituted a violation of W.Va. Code, 8–24–44. Consequently, the court declared the zoning ordinance "invalid, void and of no legal effect." The appellants then requested an inquiry into the issue of damages. The circuit court denied this request finding no "actionable damages."

The appellants contend that the rezoning blighted the neighborhood and caused a decline in property values which they were prepared to prove by expert testimony. Thus, they were forced to relocate and sell their homes at a reduced value. The appellants argue that the appellee's violation of W.Va.Code, 8–24–44, constitutes a *prima facie* case of actionable negligence and that they possess a private cause of action for damages resulting from such negligence under the criteria set forth by this Court in *Hurley v. Allied Chemical Corporation,* 164 W.Va. 268, 262 S.E.2d 757 (1980), and *Jenkins v. J.C. Penney Casualty Ins. Co.,* 167 W.Va. 597, 280 S.E.2d 252 (1981). The appellants therefore request that the circuit court's final order denying damages be reversed.

## I.

We note initially that W.Va.Code, 8–24–44, provides generally that "the governing body of the municipality or the county court shall afford all interested persons an opportunity to be heard with reference to [the final report submitted by the planning commission]" and such notice is to be published "within fourteen consecutive days next preceding the date set for the hearings, as Class II legal advertisements" in compliance with W.Va.Code, 59–3–1, *et seq.*[1] This notice and publication statute, W.Va.Code, 8–24–44, is part of the provisions of W.Va.Code, 8–24–1, *et seq.*, relating to Urban and Rural Planning and Zoning.

The parties do not dispute that the purpose of W.Va.Code, 8–24–44, is to provide a form of public notice and hearing prior to the formal adoption or rejection of the amended zoning ordinance by the governing body nor does either party raise the applicability of W.Va.Code, 8–24–47, "Changes of zoning rules and regulations—Considered as amendments to comprehensive plan, notice and hearing," and consequently for purposes of this case we accept the proposition that W.Va.Code, 8–24–44, is applicable.

The cross-assignment of error by the appellee that we should presume valid publication under W.Va.Code, 8–24–44, lacks merit in light of the facts developed in this case.

In order to show that notice had not been given, the appellants deposed the St. Albans City Clerk-Treasurer. Her testimony indicates that the City keeps no record of published notices, except for invoices of publishing bills and cancelled checks, but that invoices are kept only for a period of two years and that the checks issued to pay for published legal notices do not specify which notices the payment is for. The clerk further testified that from a search of

---

1. The full text of W.Va.Code, 8–24–44, is:

"After the final report has been submitted by the planning commission, the governing body of the municipality or the county court shall afford all interested persons an opportunity to be heard with reference to it at public hearings, convenient for all persons affected, to be held on dates and at times and places to be specified in notices to be published, within fourteen consecutive days next preceding the date set for the hearings, as Class II legal advertisements in compliance with the provisions of article three [§ 59–3–1 et seq.], chapter fifty-nine of this Code, and the publication area for such publication shall be the municipality or county, as the case may be. The notices shall state the dates, times and places

of the hearings, that the report contains a comprehensive zoning ordinance for the municipality or county, that written objections to the final report filed with the recorder of the municipality or with the clerk of the county court at or before the hearings will be heard and that the hearings will be continued from time to time as may be found necessary. During the period between the date of the first publication of the notice and the date of the hearing, the final report shall be on file in the office of the planning commissioner for public examination. Upon completion of the public hearings, the governing body of the municipality or the county court shall proceed to the consideration of the ordinance."

the records available to her, she could find no evidence of the contested notice having been published. Neither did her inspection of the City Council minutes reveal that the notice had been published, nor that a hearing had been held.

The appellants submitted the affidavits of J.W. and Alberta Grady with their motion for a summary judgment. The two affidavits, which are identical in form, state that the affiants, both of whom are parties to this proceeding, had searched through the records of four area newspapers and through the available records of cancelled checks retained at City Hall, and that "after a diligent search, no such cancelled checks were found."

Several other salient facts were before the circuit court. In the record there were the minutes of the St. Albans Planning and Zoning Commission public hearings and copies of the newspaper notices giving the date and time of these hearings. This suggests that where publication has been done records were kept. Of even greater significance is the appellee's answer to requests for admission submitted by the appellants. In Request No. 11, the appellee was asked if it were not true

> "That the St. Albans City Council at its regular meeting on January 18, 1971, accepted the final report of the St. Albans Planning and Zoning Commission on the proposed Zoning Ordinance and that the Zoning Ordinance, was placed on its first reading and read a first time without notice affording the plaintiffs or other interested persons an opportunity to be heard."

The appellee's answer was: "The defendant states the opportunity by the plaintiff to be heard was not sought and was not denied." We do not believe this to be a denial that it had published the requisite notice and held the public hearings. However, the appellee's admission that it had received the Planning and Zoning Commission's final report on January 18, 1971, which was admitted in the answers to Request Nos. 9 and 11 clearly shows the appellee in noncompliance with W.Va.Code, 8–24–44. The statute requires that the no-tice and public hearing be held before the governing body begins its consideration of the ordinance: "Upon completion of the public hearings, the governing body of the municipality or the county court shall proceed to the consideration of the ordinance." W.Va.Code, 8–24–44.

▪ The appellee relies on the language of Syllabus Point 3 of *G–M Realty, Inc. v. Wheeling*, 146 W.Va. 360, 120 S.E.2d 249 (1961), to the effect that: "The enactment of a zoning ordinance of a municipality being a legislative function, all reasonable presumptions should be indulged in favor of its validity." This language as was restated in Syllabus Point 2 of *Anderson v. City of Wheeling*, 150 W.Va. 689, 149 S.E.2d 243 (1966), relates to the more general rule that legislative enactments falling within the power of a legislative body are presumed to be valid. We have held in *Hager v. Melton*, 66 W.Va. 62, 66 S.E. 13 (1909), that where a statute or city charter requires that a municipal ordinance be published it shall not be effective in the absence of such publication. Moreover, it is generally held that where a statute requires publication of a notice for public hearing prior to the enactment of a zoning ordinance the failure to comply with this requirement will render the zoning ordinance invalid. 82 Am.Jur.2d *Zoning and Planning* § 50 (1976); Annot., 96 A.L.R.2d 449 (1964); 1 R. Anderson, *American Law of Zoning* § 4.11 (2d ed. 1968); 5 P. Rohan, *Zoning and Land Use Controls* § 36.01(4) (1982 ed.).

▪ While we have traditionally been reluctant to have cases disposed of by way of summary judgments, *Masinter v. Webco Co.*, 164 W.Va. 241, 262 S.E.2d 433 (1980); *Aetna Casualty & Surety Co. v. Federal Insurance Co. of New York*, 148 W.Va. 160, 133 S.E.2d 770 (1963), we have said that: "Where the material facts established by the pleadings and other matters before the trial court are undisputed and only one inference may be drawn from them by reasonable minds, summary judgment is proper." Syllabus Point 2, *Parsley v. General Motors Acceptance Corp.*, 167 W.Va. 866, 280 S.E.2d 703 (1981); *see also*

*Wilkinson v. Searls,* 155 W.Va. 475, 184 S.E.2d 735 (1971); *Petros v. Kellas,* 146 W.Va. 619, 122 S.E.2d 177 (1961). The failure of the appellee to give any notice and hold any public hearing before it received the ordinance and had the first reading on it, all of which occurred on January 18, 1971, renders the ordinance invalid as a matter of law and the summary judgment in this case was appropriate. We accordingly affirm the trial court's ruling on the summary judgment.

## II.

■ Having found the ordinance not to have been validly passed by reason of the failure of the appellee to comply with the notice and hearing requirements of W.Va. Code, 8–24–44, we consider whether this failure gives rise to an implied cause of action under *Hurley v. Allied Chemical Corporation, supra,* and *Jenkins v. J.C. Penney Casualty Ins. Co., supra.*

In Syllabus Point 1 of *Hurley v. Allied Chemical Corporation, supra,* we summarized the test that would be applied in order to determine if a private cause of action would be implied from a State statute:

"The following is the appropriate test to determine when a State statute gives rise by implication to a private cause of action: (1) the plaintiff must be a member of the class for whose benefit the statute was enacted; (2) consideration must be given to legislative intent, express or implied to determine whether a private cause of action was intended; (3) an analysis must be made of whether a private cause of action is consistent with the underlying purposes of the legislative scheme; and (4) such private cause of action must not intrude into an area delegated exclusively to the federal government."

It is clear from *Hurley* that our formulation was basically derived from United States Supreme Court cases, particularly *Cort v. Ash,* 422 U.S. 66, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975). In *Hurley, supra,* 164 W.Va. at 274, 262 S.E.2d at 761, we quoted at some length from *Cannon v. University*

*of Chicago,* 441 U.S. 677, 99 S.Ct. 1946, 60 L.Ed.2d 560 (1979), stating that

"the [Supreme] Court emphasized that the statutory language creating a right or duty had traditionally been the most accurate signal of the legislative intent to confer a private cause of action:

" 'Not surprisingly, the right- or duty-creating language of the statute has generally been the most accurate indicator of the propriety of implication of a cause of action. With the exception of one case, in which the relevant statute reflected a special policy against judicial interference, this Court has never refused to imply a cause of action where the language of the statute explicitly conferred a right directly on a class of persons that included the plaintiff in the case ....' 441 U.S. at 690 n. 13, 99 S.Ct. at 1954, 60 L.Ed.2d at 57–72."

We must bear in mind that the right- or duty-creating language in a statute refers to language that is designed to give some substantive right to an identifiable class of persons. In *Cannon,* Section 901(a) of Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681, which forbade sexual discrimination in any federally assisted educational program was the basis of the action. In *Cort,* a stockholder's derivative suit was filed predicated on 18 U.S.C. § 610, which prohibited corporations from making political contributions in federal elections.

The statute under consideration in *Hurley* was W.Va.Code, 27–5–9(a), which provided that "[n]o person shall be deprived of any civil right solely by reason of his receipt of services for mental illness." In *Jenkins,* we dealt with W.Va.Code, 33–11–4(9), which prohibited certain unfair claim settlement practices.

More recently the United States Supreme Court in *Merrill Lynch, Pierce, Fenner & Smith v. Curran,* 456 U.S. 353, 102 S.Ct. 1825, 72 L.Ed.2d 182 (1982), concluded that certain prohibited transactions under the Commodity Exchange Act, 7 U.S.C. § 1, would give rise to an implied cause of action. *See also California v. Sierra*

*Club*, 451 U.S. 287, 101 S.Ct. 1775, 68 L.Ed.2d 101 (1981).

The common thread that runs through all of these cases is that the involved statutes all created some positive substantive right or duty. Such statutes prescribed or regulated some aspect of the defendant's conduct. They did not involve some procedural standard such as notice or the right to a public hearing as does W.Va.Code, 8–24–44. We are not aware of any case where the violation of a procedural statute such as the one involved in the present case has been construed to give rise to a private cause of action for damages.

Of some analogy is *Couf v. DeBlaker*, 652 F.2d 585 (5th Cir.1981), *cert. denied*, 455 U.S. 921, 102 S.Ct. 1278, 71 L.Ed.2d 462 *appeal pending*, where the court under 42 U.S.C. § 1983 considered whether a landowner was entitled to damages as a result of the downzoning of his property. The court found that the downzoning was rationally related to a legitimate state purpose and refused any relief on this basis. The court did however discuss in Note 11 another claim of the plaintiff's that there had been state procedural flaws in the enactment of the downzoning ordinance, which procedural violations it was claimed should form an independent basis for a Section 1983 action. In rejecting this theory the court stated:

> "The plaintiffs seem to urge that the defendants' violation of Florida administrative law provides a predicate for § 1983 recovery. The state court litigation established such a violation, but not every infraction of state law constitutes interference with a constitutionally protected interest. *Paul v. Davis*, 424 U.S. 693, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976). Specifically, 'although a Due Process Clause liberty interest may be grounded in state law that places substantive limits on the authority of state officials, no comparable entitlement can derive from a statute that merely established procedural requirements.' *Cofone v. Manson*, 594 F.2d 934, 938 (2d Cir.1979); *accord, Bills v. Henderson*, 631 F.2d 1287, 1298 (6th Cir.1980). This procedure-substance distinction was made in *Bishop v. Wood*, 426 U.S. 341, 345, 96 S.Ct. 2074, 2077, 48 L.Ed.2d 684, 690 (1976), but it is not certain what significance the Court attached to it. See discussion in Monaghan, *Of "Liberty" and "Property"*, 62 Cornell L.Rev. 405, 439–40 (1977)." 652 F.2d at 590.

For these reasons, we conclude that the violation of W.Va.Code, 8–24–44, in regard to notice and public hearings does not give rise to an implied cause of action under the rationale of *Hurley v. Allied Chemical Corporation, supra.*

It should be emphasized that the appellants do not attack the substantive features of the zoning ordinance nor claim that they were subject to inverse condemnation.[2] We spoke briefly in *Singer v. Davenport*, 164 W.Va. 665, 264 S.E.2d 637, 642 (1980), to the point that reasonable zoning regulations are not unconstitutional as a taking of private property without just compensation. This is a point that has been elaborated on at some length in *Agins v. Tiburon*, 447 U.S. 255, 100 S.Ct. 2138, 65 L.Ed.2d 106 (1980), which we utilized in *DeCoals Inc. v. Board of Zoning Appeals of City of Westover*, 168 W.Va. 339, 284 S.E.2d 856 (1981), to sustain a rather stringent zoning ordinance. In *Agins v. Tiburon, supra*, a claim for monetary damages was made because the zoning ordinance allegedly destroyed the entire value of the property but the Supreme Court concluded that a taking had not occurred:

> "Although the ordinances limit development, they neither prevent the best

---

**2.** Inverse condemnation is defined in note 2 of *Agins v. Tiburon*, 447 U.S. 255, 257, 100 S.Ct. 2138, 2140, 65 L.Ed.2d 106, 110 (1980), as:

> "Inverse condemnation should be distinguished from eminent domain. Eminent domain refers to a legal proceeding in which a government asserts its authority to condemn property. *United States v. Clarke*, 445 U.S.

253, 255–258, 100 S.Ct. 1127, 1129–1130, 63 L.Ed.2d 373 (1980). Inverse condemnation is 'a shorthand description of the manner in which a landowner recovers just compensation for a taking of his property when condemnation proceedings have not been instituted.' Id., at 257, 100 S.Ct. [at] 1130, 63 L.Ed.2d 171."

use of appellants' land, see *United States v. Causby,* 328 U.S. 256, 262, and n. 7, 66 S.Ct. 1062, and n. 7, 90 L.Ed.2d 1206 (1946), nor extinguish a fundamental attribute of ownership, see *Kaiser Aetna v. United States,* [444 U.S. 164], at 179–180, 62 L.Ed.2d 332, 100 S.Ct. 383 [at 393]." 447 U.S. at 262, 100 S.Ct. 2142, 65 L.Ed.2d at 113.[3]

For the foregoing reasons, we affirm the judgment of the Circuit Court of Kanawha County.

Affirmed.

McGRAW, Justice, dissenting:

I dissent from the majority's holding that a violation of W.Va.Code § 8–24–44 does not give rise to an implied cause of action under the criteria of *Hurley v. Allied Chemical Corp., supra.* The primary basis for the majority's holding is that the statute in issue involves only procedural standards and does not create substantive rights. I find such reasoning untenable. While there may be some occasions when the distinction between procedural and substantive law is justified, *see, e.g., State ex rel. Johnson v. Hamilton,* 164 W.Va. 682, 266 S.E.2d 125 (1980), in the interests of justice such distinctions must be set aside where procedural law is used to achieve results which are forbidden by the substantive law. *See, e.g., Pnakovich v. State*

*Workmen's Compensation Comm'r,* 163 W.Va. 583, 259 S.E.2d 127 (1979).

The error in the majority's holding is that they fail to recognize that the appellants possess a constitutional right to the notice and hearing prescribed by W.Va. Code § 8–24–44, guaranteed by article three, section ten of the Constitution of West Virginia, which prohibits the deprivation of life, liberty, or property without due process by law. Due process requires that a municipality, when enacting a zoning ordinance that affects the substantial property rights of its residents, afford those affected by the ordinance notice and an opportunity to contest the ordinance's provisions. *See generally Annot,* 96 A.L.R.2d 449, §§ 3, 4 (1964). The statute here in issue is simply a legislative recognition of this constitutional requirement.[*]

As the majority correctly notes, statutory language creating a right or duty has traditionally been the most accurate signal of legislative intent to confer a private cause of action. *Cannon v. University of Chicago,* 441 U.S. 677, 99 S.Ct. 1946, 60 L.Ed.2d 560 (1979); *Hurley v. Allied Chemical Corp., supra.* Therefore, the statutory language in issue here, which recognizes the constitutional rights of interested parties to notice and the opportunity for a hearing, and the duty of the

---

**3.** Some federal courts have undertaken much the same analysis in a suit under 42 U.S.C. § 1983 attacking a zoning ordinance. *E.g., Couf v. DeBlaker, supra; Hernandez v. City of Lafayette,* 643 F.2d 1188 (5th Cir.1981).

* To the extent that the appellants' cause of action is founded in constitutional guarantees of due process, it could be argued that an inquiry into an implied cause of action arising from W.Va. Code § 8–24–44 is unnecessary. Legal commentators have suggested that a direct cause of action for damages arising from the violation of constitutional rights by government officials, as in *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971), could be recognized in a zoning context. *See* Johnson, *Compensation For Invalid Land-Use Regulations,* 15 Ga.L.Rev. 559, 597–98 (1981); Note, *Damage Remedies Against Municipalities For Constitutional Violations,* 89 Harv.L.Rev. 922 (1976). *See also Gordon v. City of Warren,* 579 F.2d 386 (6th Cir.1978); *Sixth Camden Corp. v. Township of Evesham,* 420 F.Supp. 709 (D.N.J.1976); *Dahl*

*v. City of Palo Alto,* 372 F.Supp. 647 (N.D.Calif. 1974).

Furthermore, recent decisions of the United States Supreme Court which have expanded coverage of the Civil Rights Act of 1871 to include local governmental units, indicate the appellants may have a cause of action for damages under 42 U.S.C. § 1983 (1976). *See Owen v. City of Independence,* 445 U.S. 622, 100 S.Ct. 1398, 63 L.Ed.2d 673 (1980); *Lake Country Estates, Inc. v. Tahoe Regional Planning Agency,* 440 U.S. 391, 99 S.Ct. 1171, 59 L.Ed.2d 401 (1979); *Monell v. Department of Social Services,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978); *see also International Society for Krishna Consciousness, Inc. v. City of Evanston,* 89 Ill.App.3d 701, 44 Ill.Dec. 664, 411 N.E.2d 1030 (1980); *Parkway Bank & Trust Co. v. City of Darien,* 43 Ill.App.3d 400, 2 Ill.Dec. 234, 357 N.E.2d 211 (1976); *T & M Homes, Inc. v. Township of Mansfield,* 162 N.J.Super. 497, 393 A.2d 613 (1978).

24

municipality to provide these procedural guarantees prior to the enactment of a valid ordinance, is *a fortiori* indicative of a legislative intent to confer a private cause of action.

Further support for the appellants' claim that an implied cause of action exists in this case can be found in article three, section seventeen of the West Virginia Constitution, which provides: "[t]he courts of this State shall be open, and every person, for an injury done to him, in his person, property or reputation, shall have remedy by due course of law ...." Thus, when a deprivation of due process rights results in an injury to a person in his or her person, property or reputation, our State Constitution guarantees a judicial remedy. The appellants herein have alleged an injury to their property caused by the negligent and illegal act of the appellee in adopting a zoning ordinance without adhering to constitutionally based requirements of due process. Considering our sworn duty to uphold the Constitution of this State, *see* W.Va. Const. art. 4, § 5, this Court should be the last to deny the appellants access to the judiciary to seek redress of their injuries.

I am authorized to state that HARSHBARGER, J., joins me in this dissenting opinion.

McGraw, J., dissented and filed an opinion.