[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This is a habeas corpus petition brought by the Petitioner acting pro se alleging that his due process rights under the United States Constitution were violated in the proceedings surrounding the issuance of a Disciplinary Report (or "ticket") dated February 20, 2001 under which he was found guilty of theft of more than $100.00 which is a Class A offense. According to the Report a search of the Petitioner's cell on February 6, 2001 revealed that five MacDougall Correctional Institution law books were in his cell. The Report states in pertinent part: "Four of the books had covers torn off and several of the beginning pages missing. The edges of the books, including the MacDougall library services stamp, were darkened with a black marker. These things were done to hide the identity and source of these reference materials, which are not to be taken out of the library. Inmate Outlaw then covered the books with tape and paper which he then identified as his own by writing his name and number on them in black marker." As a result of the guilty finding the Petitioner was sentenced to fifteen days of punitive segregation, thirty days confined to quarters and ninety days loss of mail privileges.
The Respondent has filed a Motion to Dismiss dated August 2, 2001 claiming that the penalty did not result in loss of good time, and, therefore, his length of confinement was not affected by this Disciplinary Report, and, thus, he fails to state a claim of loss of liberty. The Respondent Warden is essentially correct. However, this Disciplinary Report if allowed to stand would conceivably affect his chances of parole which would affect his length of confinement. Based upon that, this Court will not dismiss the petition as moot.
The standard for due process involving a disciplinary report/hearing concerning an inmate was established by the United States Supreme Court in the case of Wolff v. McDonnell, 418 U.S. 539 (1974) which set forth the following three criteria:
1. Advance written notice of charges must be given to the disciplinary action inmate no less than twenty-four hours before his appearance before the Hearing. CT Page 11181
2. There must be a written statement by the fact-finder as to the evidence relied on and reasons for the disciplinary action.
3. The inmate should be allowed to call witnesses and present documentary evidence in his defense if permitting him to do so will not jeopardize institutional safety or correctional goals.[1]
From the habeas hearing before this Court held on August 2, 2001,[2]
the Court finds the following facts:
1. Although Petitioner claims that it was required that he receive notice of the violation within twenty-four hours of the confiscating of the books in his cell on February 6, 2001, based upon the testimony of Captain Michael Cleaver whom the Court qualified as an expert in the Code of Penal Discipline and Disciplinary Procedures, the Court finds that it was not determined until February 20, 2001 that the subject books were actually stolen by the Petitioner. Based upon Captain Cleaver's testimony and the subject Disciplinary Report Petitioner was notified of the Disciplinary Report on February 20, 2001 at 3:20 p.m. which was within twenty-four hours of the issuance of the report at 10:40 a.m. on that same date. Accordingly, the first factor of the Wolff standard was met.
2. The Petitioner received a copy of the written decision by the hearing officer (fact-finder) by delivery to him of a copy of the Summary Process Hearing Form, Respondent's Exhibit A, which was delivered to the Petitioner on the day of the hearing, March 8, 2001. This satisfies the second factor of Wolff, supra.
3. The disciplinary investigator Paskins and Petitioner's advocate, Clark, investigated the matter, and the Disciplinary Investigation Report sets forth the Petitioner's version of the incident and his claims as to violation of due process, and a written statement was taken from the Petitioner's requested witness, inmate Sammy Saez. The statement of inmate Saez and the Petitioner's version of the incident and his claims were all presented to the hearing officer at the time of the hearing on March 8, 2001. The third and final prong of Wolff, supra was, therefore, met in that the inmate was permitted to call witnesses and present evidence in his own defense.
 * * * *
Petitioner has also claimed that he suffered due process violations in that various time frames under the Department of Corrections Administrative Directive 9.5 (the Code of Penal Discipline) Respondent's Exhibit B, were not met. However, paragraph 43 of the said Code of Penal CT Page 11182 Discipline states, inter alia, "Technical mistakes in the disciplinary process, including minor discrepancies in meeting time frames, shall not be cause for the reversal or dismissal of a Disciplinary Report." (Emphasis added). This Court finds that any time frame discrepancies were minor. Further, the seminal case involving this issue is Sandin v.Connor, 515 U.S. 472, 481, 482 (1995). The Court stated: "By shifting the focus of the liberty interest inquiry to one based on the language of a particular regulation, and not the nature of the deprivation, the Court (referring to Hewitt v. Helms, 459 U.S. 460 (1983) which was overruled bySandin v. Connor) encouraged prisoners to comb regulations in search of mandatory language on which to base entitlements to various state-conferred privileges. . . . A prison regulation (is) primarily designed to guide correctional officials in the administration of a prison. Not only are such regulations not designed to confer rights oninmates,. . . . (Emphasis added). In light of the above discussion, we believe that the search for a negative implication from mandatory language in prisoner regulations has strayed from the real concerns undergirding the liberty protected by the Due Process Clause. The time has come to return to the due process principles we believe were correctly established and apply in Wolff and Meachum . . . We hold, therefore, that neither the Hawaii prison regulation in question, nor the Due Process Clause itself, afforded Connor a protected liberty interest that would entitle him to the procedural protections set forth in Wolff." In the case at bar this Court finds that if the prison regulations do not entitle the Petitioner to the procedural protections set forth in Wolff, then they certainly do not protect a liberty interest that would violate the Due Process Clause.[3] Jenkins v. Haubert, 179 F.3d 19, 28 (2d Cir. 1999), (the Second Circuit Court of Appeals includes the State of Connecticut) quoted Sandin, supra, stating that "Sandin held that such (liberty) interests are generally limited to freedom from restraint which . . . imposes a typical and significant hardship on the inmate in relation to the ordinary incidents of prison life. . . . Although there is no bright-line rule regarding the length or type of sanction that would give rise to an `atypical and significant hardship', this standard will not be met unless the disciplinary and administrative sanctions are onerous." Citations omitted ". . . 30 days' disciplinary segregation did not constitute atypical, significant hardship." In Colon v. Howard,215 F.3d 227, 231-32 (2d Cir. 2000) the Court commented that confinement for a period of less than 101 days would not constitute an atypical and significant hardship. Judge Newman commented that confinement in normal SHU (segregated housing unit) conditions of less than 180 days did not constitute atypical and significant hardship. Here, in the case at bar, Petitioner served only fifteen days punitive segregation and thirty days confined to quarters with ninety days loss of mail. This is clearly not atypical and significant hardship. Further, under Frazier v. Coughlin,81 F.3d 313, 317 (2d Cir. 1996) and Cofone v. Manson, 594 F.2d 934, 938
CT Page 11183 (2d Cir. 1979), the court found that state procedures do not create constitutional due process rights. As pointed out in Cofone, "No comparable entitlement (to due process) can derive from a statute that merely establishes procedural requirements." If a statute that establishes procedural requirements does not implicate a due process right, then certainly a prison regulation does not implicate a due process right. In Watson v. City of New York, 92 F.3d 31 (2d Cir. 1996) the court stated: "The mere expectation of receiving a state afforded process does not itself create an independent liberty interest protected by the Due Process Clause". . . . Constitutionalizing every state procedural right would stand any due process analysis on its head." Id. 38.
Finally, although not specifically raised by the parties, this Court finds that the evidence presented to the Hearing Officer, which included the law books found in Petitioner's cell which clearly belonged to the library, meets the "some evidence" standard for a guilty finding which standard is set forth in Superintendent v. Hill, 472 U.S. 445, 455
(1985).
 CONCLUSION
This Court, in the case at bar, finds Petitioner's claims regarding time frames, etc. do not violate the code of discipline, and even if they did, such violations would not result in a violation of his due process rights.
Accordingly, the petition for habeas corpus is DISMISSED.
Rittenband, JTR